you'll refer to him as Moeen.
MR. LEVISON: We have not agreed to anything. I'm asking the witness can I --
MR. MADUFF: No, I'm sorry. Let me clarify. The request from my clients were that you properly 0:02:20 refer to him as Moeen.
MR. LEVISON: Thank you.
BY MR. LEVISON:
Q. Mr. Khalil, again, I reviewed my question. I understand you go by Mike. Do you mind if I call you Mike?
MR. MADUFF: Object --
THE WITNESS: No. Call me -- call me Moeen. Call me by my real name. 0:02:36
BY MR. LEVISON:
Q. Okay. You can call me Brad. It's fine. Do you regularly use the name Mike when you speak to people and you introduce yourself?
A. I don't know what this got to do with the case but, you know, it's --
MR. MADUFF: Okay. I'm going to --
THE WITNESS: Does it belong to the case? 0:02:54
MR. MADUFF: Okay. Moeen, just answer to the best of your ability.
I'm going to object to the question as vague

pending question. If there's no question pending,
please feel free to take a break.
This is meant to be as least painful as 0:05:17
possible, so I want to make sure you're comfortable and
you're not hungry and not answering questions, okay?
A. Okay.
Q. Have you taken any medicines today which
would impair your ability to testify or would impact
your memory?
A. No.
Q. Okay. Is there any reason why you wouldn't 0:05:35
be able to testify truthfully today or answer my
questions?
A. No.
Q. Okay. Have you ever been convicted of a
felony?
A. No.
Q. Have you ever been convicted of a misdemeanor
involving false swearing or fraud?
A. No.
(Certified question.)
BY MR. LEVISON:
Q. Where do you live? 0:05:55
A. Does that matter for the case? Object to --
I don't know. I mean --

MR. GAJDA: -- wasn't an objection to it. He was clarifying his position, Brad, and you can't cut him off when he's speaking.

MR. LEVISON: You're trying to tell me that your asking for a protective order didn't stop the clock. We were very clear that it paused it. So at this point, we are very clear of your tactics and we will proceed accordingly. 0:12:09

Allyson, will you read the last pending question before Mr. Madoff said that he was going to seek a protective order. 0:12:23

MR. GAJDA: It's Maduff.

MR. MADUFF: I object to the improper recitation of events. But again, let's please move on.

THE RECORDER: All right. Give me one second to make sure I get it. 0:12:45

(Record replayed.)

MR. LEVISON: We're going to certify that question for purposes of the record.

BY MR. LEVISON:

Q. Moeen, are you married?

A. Yes.

(Certified question.)

BY MR. LEVISON:

Q. What is your spouse's name? 0:13:30

order. I do not like the fact that you are making the witness uncomfortable. I believe it is harassment based on what we have had. 0:14:23

However, I would like for us to continue with the deposition on substantive areas so that we can complete it and we can do a proper meet-and-confer and resolve these other things at a later time. 0:14:35

MR. LEVISON: I'm going to certify the question. And we're going to exclude the time of Mr. Maduff's speaking objection.

BY MR. LEVISON:

Q. Moeen, is your wife -- and I apologize if I misstate her -- how to say her name -- Wejdan, W-E-J-D-A-N? And if I mispronounce it, please, I would like to know the correct pronunciation of her name. 0:14:49

MR. MADUFF: Okay. You are continuing to go down a road that you know we consider harassing and has made the witness uncomfortable. Again, do I need to say I am suspending the deposition for each one of these? Can we do it for -- 0:15:01

MR. LEVISON: Yes.

MR. MADUFF: -- a -- all right. Then I am --

MR. LEVISON: You --

MR. MADUFF: -- suspending the deposition --

MR. LEVISON: Then --

And once the Court rules, maybe the Court will order that -- rule in Mr. Khalil's favor. Maybe the Court will rule against him. We can answer in writing.

But this deposition should continue and should be completed on the substantive issues. These are not relevant. They're barely tangential, if at all. 0:16:31

BY MR. LEVISON:

Q. Moeen, are you refusing to answer if your wife is Wejdan? And again, I apologize if I mispronounced her first name. 0:16:45

MR. MADUFF: I am hereby suspending the deposition for the purposes of seeking a protective order for that question and a proper meet-and-confer. However, I respectfully request that we continue the deposition on other subjects so that we complete the rest of it.

(Certified question.)

BY MR. LEVISON:

Q. Sir, have you ever owned 10916 El Caballo Court, Delray Beach, Florida?

MR. MADUFF: I am going to suspend the 0:17:08 deposition for purposes of that question so that we seek a protective order and a proper meet-and-confer,

BY MR. LEVISON:

Q. Moeen, I'm going to show you what we've marked as Exhibit 1. I'm going to -- you -- because I control it, please tell me if you need me to make it large or small. I will go through each page as you see 0:19:01 is necessary.

I first want to direct you to the very first line here where we see -- I'm circling it -- where it says "Moeen Khalil," and again, I apologize for mispronouncing your wife's name -- "Wejdan Khalil." Is 0:19:14 that you and your wife that appears in Exhibit 1?

MR. MADUFF: All right. I'm going to object to the question because you presented an exhibit which is a document that I don't believe has been provided to us.

This continues down the same line that I have 0:19:28 created a standing objection based on the fact it is harassing the witness and the witness has stated that he is uncomfortable.

I am therefore suspending the deposition for the purposes of this question so that we may do a proper meet-and-confer and hold a -- file a proper 0:19:41 motion for protective order.

In the meantime, I ask that we move on to other substantive portions of the deposition.

different.

(Certified question.)

BY MR. LEVISON:

Q. What are you currently invested in as part of you being an investor?

MR. MADUFF: That I'm going to object to --

THE WITNESS: I won't answer that question.

MR. MADUFF: -- as being part of the same 0:34:27 line of harassment. If you want to ask about his investments with respect to WirelessPCS and SkyNet, I don't want to be objecting to that.

But to the extent that you're harassing the witness about his personal investments and financial 0:34:43 situation -- and I'm not entirely clear if that's where you're going -- I respectfully suspend the deposition as to that question so that we may have a proper meet-and-confer and seek a protective order.

If I am misunderstanding your question, please clarify. 0:34:59

MR. LEVISON: Are you directing your client not to answer the question?

MR. MADUFF: Yes.

MR. LEVISON: Okay. We'll --

MR. MADUFF: To the extent --

MR. LEVISON: -- certify that question.

answer. I have to go to the right people to answer this. And I get the answer and I will send it to you guys.

(Certified question.)

BY MR. LEVISON:

Q. Sir, do you receive any W-2 wages currently?

MR. MADUFF: I'm going to object to that question as going down the personal asset line. I'm 0:40:04
going to suspend the deposition for the purpose of engaging in an appropriate meet-and-confer and seeking a protective order if necessary, and ask that we move on to other questions.

BY MR. LEVISON:

Q. Sir, are you not answering this question based on the instruction of your counsel? 0:40:26

A. Yes.

MR. LEVISON: Okay. We'll certify that question.

BY MR. LEVISON:

Q. Sir, have you ever represented that you are the CEO of SkyNet Wireless?

MR. MADUFF: Objection; form.

THE WITNESS: Objection; form? 0:40:45

MR. MADUFF: No.

BY MR. LEVISON:

Q. Sir, are you familiar with Exhibit 2?
A. What you're showing on the TV -- on the -- on Facebook? 0:42:27
BY MR. LEVISON:
Q. Yes.
A. Okay.
Q. Is this your Facebook page?
A. Yes.
Q. And did you put in there CEO SkyNet Wireless at Metro by T-Mobile?
MR. MADUFF: Brad, could you enlarge that, please, for us.
THE WITNESS: Okay.
BY MR. LEVISON:
Q. Did you type that in? Is that something that you put on your Facebook page? 0:42:56
A. Yes.
Q. And is that you there in the middle picture, top row, with sunglasses?
A. Yes.
(Certified question.)
BY MR. LEVISON:
Q. Okay. So again I repeat. My question is, you have -- if you're receiving any W-2 wages currently. 0:43:18

Q. Correct.
A. I don't recall.
Q. What do you currently do as CEO of SkyNet Wireless?
A. Well, with SkyNet, I'm an investor.
Q. How many different SkyNet Wireless are there?
A. Now I think maybe is one. 0:48:29
Q. How many -- in the last five years, how many SkyNet Wireless have you been involved with?
A. Not sure. One or two.
Q. Could you identify what states these SkyNet Wireless operated in the last five years?
A. In the last five. The only one probably 0:48:58
in Florida. 0:48:59
Q. In Florida. And what was your role in connection with the SkyNet Wireless in Florida?
A. Again, I'm investor. I invest the company.
(Certified question.)
BY MR. LEVISON:
Q. What money were you paid for being an investor in SkyNet Wireless in Florida?
MR. MADUFF: That I'm going to object to as 0:49:25
neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in going after his personal assets again, which is harassing.

BY MR. LEVISON:
Q. Sir, were you the officer and/or registered agent at -- now presently or at one point in the past of all the companies identified in Exhibit 4? 0:54:51
MR. MADUFF: The exhibit is not fully visible on our screen. Could you please reduce it down for us so that we can see it? Thank you.
Do you need the question repeated or did you hear it?
THE WITNESS: I hear it. I'm just looking at it. 0:55:09
Yes.
(Certified question.)
BY MR. LEVISON:
Q. Are you currently an employee of any of the companies listed on Exhibit 4?
MR. MADUFF: I'm going to object to that question as going for current income. If it's going for something beyond that, please let me know.
But it appears to be current income, which is 0:55:41 not appropriate to this case. It is harassing; therefore, I am going to suspend the deposition for the purpose of engaging in an appropriate meet-and-confer and for the purpose of seeking a protective order if necessary and ask that we move on.

BY MR. LEVISON:
Q. Sir, are you not going to answer that question on the advice of your counsel? 0:56:02
A. I'm not going to answer.
MR. LEVISON: We're going to certify that question.
(Certified question.)
BY MR. LEVISON:
Q. Sir, any of the companies on Exhibit 4, are you currently invested in them?
MR. MADUFF: Again, I'm going to object to the question as seeking information on his personal wealth. If you can point to something beyond that, I'm open to hearing it. 0:56:20
However, for the moment, I'm suspending the deposition for the purpose of seeking an appropriate meet-and-confer and a protective order, as it is otherwise harassing, but ask that we continue the deposition on other subjects. 0:56:36
BY MR. LEVISON:
Q. Sir, are you not going to answer that question based on advice of your counsel?
A. Yes, I'm not going to answer.
MR. LEVISON: We're going to certify that question. 0:56:46

answer, sir?
A. I have my office there too. I had.
Q. Have you relocated your office since you stopped leasing the property on Military Trail?
A. No.
Q. Do you currently have an office that you work out of?
A. I work from home.
Q. Sorry, what was that answer? 0:58:50
A. I work from home.
(Certified question.)
BY MR. LEVISON:
Q. And so where do you work presently? What is the address?
MR. MADUFF: I'm going to object to that question as implicitly asking him where his home is. That is in violation of the Court's order this morning. 0:59:04 I am going to suspend the deposition for the purpose of seeking a protective order and for a proper meet-and-confer and ask that instead we move on to other things.
BY MR. LEVISON:
Q. Are you not going to answer that question based on the advice of your counsel?
A. Yes, I'm not going to answer. 0:59:20

Q. What was your first job out of college?
A. First job out of college... I had my own business.
Q. And what was this -- what did the business do?
A. It was grocery store.
Q. Sorry, what was that?
A. Grocery store.
Q. Grocery. And how long -- and did you actually work in the grocery store?
A. I did.
Q. How long did you work in the grocery store?
A. About six years probably. 1:02:16
Q. What was the name of the grocery store?
A. Phillip's, I think. No, it's Phillip's Mart.
Q. Do you still own Phillip's Market?
A. No.
(Certified question.)
BY MR. LEVISON:
Q. When did you sell Phillip's Mart?
MR. MADUFF: Again, I'm going to object to this line of questioning as going to his personal 1:02:40 wealth.
If you have something else that it relates to, I'm happy to hear, but I'm going to suspend the

Q. What is Qubx, Q-U-B-X, Enterprise, LLC?
A. It's a company we create with some ideas we think to do, but nothing's been done yet with it.
Q. And again, when we -- when you use that term "we," are you talking about you --
A. No, no. 1:11:01
Q. -- and your brother?
A. No, no. It's not -- no, not my brother. It's me. I use maybe the wrong term. I say we. This one's, it's me, I create.
Q. What is Smartnet Wireless, FL, LLC?
A. Smartnet Wireless we use in South Florida here to -- for management basically. It's connected with my stores in South Florida. 1:11:24
(Certified question.)
BY MR. LEVISON:
Q. What stores do you have in South Florida?
MR. MADUFF: I'm going to object to the question as going after his personal assets. If you can give me some other purpose, I'm willing to hear it. 1:11:46
However, it's part of what we consider to be harassing, and therefore I am going to suspend the deposition for the purpose of seeking a protective order and a meet-and-confer to see if we can resolve it, obviously. But I ask that we move on to other 1:11:59

Gotta be a while back, so I'm not sure what bank I was using at that time.

(Certified question.)

BY MR. LEVISON:

Q. Are all the banking relationships for your investments through the same bank or do you use multiple different banks? 2:26:14

MR. MARTIN: I'm going to object to the question as going after his personal assets and investments. Once again, I'm open to hearing how it is otherwise relevant to the case. And my suspension instruction and all that is there. 2:26:32

BY MR. LEVISON:

Q. Do you -- are you not going to answer this question based on the advice of counsel?

A. Correct.

MR. LEVISON: I'm going to certify that question.

BY MR. LEVISON:

Q. Is there any business relationship between Wireless PCS FL, LLC; Wireless, PCS TX, LLC; Wireless PCS CA, LLC; Wireless PCS MI, LLC; Wireless PA, LLC; SkyNet Wireless, LLC; Wireless PCS US -- USA, LLC; Wireless PCS IN, LLC; Wireless PCS CO, LLC; Wireless PCS AZ, LLC; Wireless PCS Chicago, LLC; Wireless PCS 2:26:52 2:27:19