**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DATISHA HUNTER, et al.<br><br>Plaintiffs,<br>v.<br><br>WIRELESSPCS CHICAGO LLC, et al.<br><br>Defendants. | Case No. 1:18-cv-980<br><br>Magistrate Judge Beth Jantz |

**DEFENDANTS MOEEN AND SAED KHALILS' RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS**

Defendants Moeen and Saed Khalil, by and through their attorneys, Daniel S. Gajda, and Aaron B. Maduff, of Maduff & Maduff, LLC, respectfully respond to "Plaintiffs' Motion for Sanctions Against Moeen Khalil and Saed Khalil for not Obeying the October 5, 2021, Order (Doc. 257) as follows:

## INTRODUCTION

Defendants were given leave reopen the depositions of Moeen and Saed Khalil to address 12 specific questions and any follow-up to those questions, despite the Court's order that they "address only those matters that were previously suspended or reasonably related thereto." (Doc. 257 at 14). Plaintiffs did not ask even one of those 12 questions. The questions Defendants did ask –all beyond the scope of the Court's order – were answered, including a remarkable number of the questions Plaintiffs now list in their motion. Plaintiffs have suffered no prejudice.

Remarkably, many of the questions Plaintiffs asked the Khalils – most of which the Khalils did answer (until Plaintiffs went into privileged communications regarding Defendants' litigation and settlement strategies) – were questions Datisha Hunter and Wilfredo Rivera refused to answer

at their own depositions. In fact, this motion appears to be in retaliation for Defendants' Motion to Compel answers from Datisha Hunter or dismiss her from the case because she refuses to testify about her damages.

Plaintiffs approached the deposition with the goal of goading the Khalils into not answering questions for the purpose of obtaining a sanction of default because there is no other way to obtain a judgment against them.[1]

Worse, as discussed in Defendants' Motion with respect to Datisha Hunter's deposition, Defendants can present no damages in this case. (At best, there was a period of time during which Mohammad Ghaben and his company, Hamad Brothers – now dismissed by Plaintiffs – ran the stores and Plaintiffs have argued that he failed to pay the employees for all hours worked, but we have no depositions at this time as to those former Defendants.)

Consequently, Plaintiffs have used discovery to pressure these individual Defendants into a settlement with demands that repeatedly harp not on the merits, but on the cost of discovery and litigation.[2] A such, the instant motion results from an effort by Plaintiffs to pressure the individual Defendants with questions that are specifically designed to go after pain points. It is no surprise that these few questions drew resistance from the individual Defendants where more relevant

[1] To be discussed another day, Defendants Moeen and Saed Khalil have no liability as employers under the economic realities test (*see Pietrxycki v. Heights Tower Service, Inc.,* 290 F.Supp. 3d 822, 850 (N.D.Ill, 2017). Given other testimony in the case *inter alia* that they took no money from the Corporate Defendants at all, Plaintiffs will be unable to meet the substantial burden required to pierce the corporate veil. (*see Fontana v. TLD Builds, Inc.,* 840 N.E.2d 767, Ill. App. Ct. 2005). As a result, getting the Court to enter the drastic sanction of striking the answer is the only way to obtain a judgment against these individuals.

[2] Unfortunately, it is not appropriate at this point for Defendants to address specifics of those demands, but the entrees are telling. On May 13, 2021, Plaintiffs sent an email seeking settlement discussions which stated "…your clients will have to pay at least $... to $... in their own legal fees to defend against this case through discovery and motion practice. That amount will be even higher to defend this matter through trial." On October 8, 2021, Plaintiffs sent an email stating, "We are hopeful now that the bulk of oral discovery is complete and in light of Judge Jantz's recent ruling [finding sanctions appropriate with respect to the costs of the 30(b)(6) deposition] that your client will now be more willing to engage in good faith settlement negotiations." The settlement demand itself began by using the Court's October 5 order as pressure. On December 10, 2021, Plaintiffs sent an email stating, "At this point, we believe this litigation will become even more contentious as motion practice amps up and parties evaluate summary judgment. Therefore, we thought we should ask whether there is any appetite on the part of Defendants to resolve this matter."

questions (despite being beyond the scope of the Court's order) were answered willingly and without resistance.

**The Questions**

During the course of each of Khalil deposition May of 2021 (May 25 for Moeen Khalil and May 27 for Saed Khalil) Defense counsel suspended the deposition as to roughly 22 specific questions for the purpose of obtaining a protective order.[3] In the status report of July 9, 2021, Plaintiffs withdrew questions related to the Defendants' residences. (Doc. 228 at 5) because the Court had already "advised that the deponent need not provide their home address, and the parties must proceed with the deposition." (Courtroom deputy's email of My 25, 2021.)

Defendants withdrew their suspension of one question, whether Defendant Saed Khalil was had ever written a check on an ACO bank account to pay for personal expenses because he answered the question. The answer was an unequivocal, "No." Plaintiffs have that answer and have suffered no prejudice.

With the exception of three questions,[4] each was a specific distinct question which could have been re-asked in the reopened deposition. Once that question was asked Plaintiffs could have had follow-up questions. But despite the Court's Order of October 5, 2021, Doc. 257 requiring Plaintiffs to address "only those matters that were previously suspended or related thereto", Plaintiffs did not re-ask a single such question. Instead, Plaintiffs used the deposition as a means to further pressure Defendants with many questions which were carefully aimed at pain points.

[3] This is a different situation than Datisha Hunter's deposition which was reopened to cover some 40 areas where entire lines of questions were suspended.

[4] The three questions which do not fit this pattern were: 1) "Why – and could you please tell me why you don't believe that's an appropriate question?" 2) Sir, can you tell me why you don't think it's an appropriate question to ask who shares your business? And 3) "And why do you believe it has nothing to do with this case?"

As none of the questions about which Plaintiffs complain were questions for which a protective order was sought and denied, Defendants were in compliance with the Court's Order and Plaintiffs' motion should be denied. Even so, as discussed in the next section, Plaintiffs have suffered no prejudice.

**Defendants were prepared to meet and confer pursuant to LR 37.2 but Plaintiffs refused to do so unless the 30(b)(6) fees were done at the same time**

Defendants agreed to a 37.2 call about the Khalil for Monday, December 13, but Plaintiffs' counsel followed this agreement by conditioning the call on combining it with a 37.2 about the proposed fees for the 30(b)(6) deposition which Defendants were not at that point ready to do as counsel was still going through roughly 124 fee entries. Plaintiffs refused to go through with the meet and confer on the Khalil deposition issues without agreement on the 30(b)(6) fees (which 37.2 was had later.)

There were numerous other dates offered including the entire week of December 13, but failed for the same reasons. The entire matter is reported in the joint status report of December 16 (Doc. 278) and is incorporated here by reference should the Court desire to review it.

**Plaintiffs Suffered No Prejudice by The Allegedly Unanswered Questions**

Putting aside the fact that the questions asked were beyond the scope of the Court's order reopening the deposition, Plaintiffs suffered no prejudice for three general reasons: 1) Many of the questions were answered. 2) Most of the questions simply were not relevant to, or likely to lead to admissible evidence, relevant to any issue in this case. 3) Even those that approached relevance

which went unanswered were not important enough to cause any prejudice. 4) Had a proper Rule 37.2 conference been held, Plaintiffs could have described their concerns and any alleged prejudice could have been cured.

Plaintiffs seek as a sanction that Defendants' Answers be stricken, and a default judgment be entered against them. Plaintiffs must first show that Defendants failed to comply with the Court's order. As already noted, the depositions were reopened for the sole purpose of having Plaintiffs ask 12 specific questions for which Defendants had suspended prior depositions. Plaintiffs did not ask any of those questions, therefore Defendants did not nor could not fail to answer any of those questions. As a result, Defendants did not refuse to comply with a court order. But assuming that they had, the elements that the Plaintiffs must show for such an extraordinary sanction as striking an answer are as follows:

(1) the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct; (2) the violation of the discovery order must be attributable to the client instead of the attorney; (3) the violating party's misconduct must substantially prejudice the opposing party; and (4) a less drastic sanction would not substantially achieve the desired deterrent effect. Moore v. CITGO Refining and Chemicals Co. L.P. 735 F.3d 309 (5th Cir. 2013, citing Doe v. Am. Airlines, 283 Fed.Appx. 289, 291 (5th Cir.2008) (per curiam) (quoting FDIC v. Conner, 20 F.3d 1376, 1380–81);

Plaintiffs do not meet the first element: there was no bad faith by either Khalil. They were provided the 12 questions they were to answer and came prepared to answer them. Second, and most importantly, Plaintiffs do not meet the third element: even if there were a violation, it did not prejudice Plaintiffs at all, let alone substantially. Questions about how much or where money is being earned in 2021, or how these Defendants are investing their money does not go to any issue

in this case. With respect to any questions which may relate to piercing the corporate veil, Plaintiffs have taken a dozen depositions on the topic including several 30(b)(6) depositions. They have all the necessary information numerous times over.

Third, although there was no real effort at 37.2 discussions, Defendants remain ready, willing, and able to answer any question which might legitimately go to the issues in this case. No sanction at all is appropriate, but certainly, a discussion by the parties and Court as to what specifically is needed should result in resolving the issue, and Plaintiffs therefore cannot meet the fourth element.

Moreover, the questions Plaintiffs' counsel asked were specifically designed to draw resistance from the Khalils. For example, Plaintiffs are well aware that Defendants are private about their homes and personal lives – in the first deposition the Court noted that they do not have to provide their home addresses. Questions like """…[d]o any of [your household members] have income that contributes to household income?" are highly sensitive. And still, had Plaintiffs provided an explanation of the need for this information, Defendants would have addressed ways to fill that need. The same is true for questions related to their homes: "Do you own a house?"; "Do you have a mortgage?"; "Sir, do you have any mortgages currently outstanding?" Indeed, what possible purpose could Plaintiffs have for asking Saed Khalil whether he currently has a mortgage? It cannot go to piercing the corporate veil because even if the question was followed with whether he is paying it from his businesses; none of those business are the Corporate Defendants which have been out of business for more than three years. Plaintiffs already know that Saed Khalil never took any money out of them. Plaintiffs bear the fault for intentionally provoking Defendants into refusals to answer questions.

An examination of the questions raised by Plaintiffs beginning on page 3 of their motion and going through page 7 demonstrates that there was no prejudice to Plaintiffs.[5] Many of these questions were simply aimed at pain points. As to Moeen Khalil:

A. "Do you own a house?"; Do you have a mortgage?

● Any discussions of his home and mortgage would necessarily include a statement of where he lives (which is apparent from the fact that Plaintiff's counsel made the mortgage with an address an exhibit). And yet, in light of the Court's email of May 25, 2021, Plaintiffs withdrew questions about personal residences, including a question about his mortgage. Doc. 228 at 5. At best asking this question in the renewed deposition is a demonstration that Plaintiffs did not engage in those 37.2 discussions in good faith. At worst, it is an effort to mislead the Court.

B. "…[d]o any of [your household members] have income that contributes to household income?

● While questions of whether monies belonging to the Corporate Defendants was used for personal expenses might relate to the piercing the corporate veil theory, whether his wife currently makes money (and presumably followed by how much and what she does) is simply oppressive.

C. "Who set your salary at Smart Net Wireless in 2019?"; "What did you set your salary at in 2019? [and follow up]"; "What was your income that you stated on your 2019 tax return? [and follow-up?]

● Defendant M. Khalil (about whom Plaintiffs complain) *answered* these questions. As to the first, the answer was that he set his salary at SmartNet Wireless in 2019. As to the second, he could not remember what his salary was two years ago. He answered affirmatively that he reviewed his tax returns before filing them. And he finally stated that he did not want to say what was on his tax return in 2019 (which was probably a joint tax return). Nonetheless, it was clear that he did not know exactly what was on it. "I'm not sure exactly."

● Putting aside that he answered the questions, the questions were inappropriate. The Corporate Defendants in this case ceased doing business in 2017 for SkyNet Wireless,

[5] In the prior section, Defendants have demonstrated that these questions were beyond the scope of the reopened deposition because they were not questions suspended in the prior deposition for which the Court denied a protective order and ordered the deposition reopened. Assuming *arguendo* that the questions were properly within the scope of the order, this section describes how the questions were answered, were inappropriate, or where no prejudice resulted from a refusal to answer for other reasons.

IL LLC and in June of 2018 for WirelessPCS Chicago, LLC. Even if Mr. Khalil's income (even without reference to whether that money was coming from the Corporate Defendants) during the course of their operations were somehow relevant, his income in 2019 is not. Moreover, the question has nothing to do with the Corporate Defendants in this matter, but rather with Smart Net Wireless which is not a Defendant, and had no interaction with the Corporate Defendants in this case.

As to Saed Khalil:

D. "You had taken out a loan. Was this a personal loan you took out related to this lawsuit?"[6]

● Whether Mr. Khalil has had to take out a personal loan to pay his attorney's fees in this case has no relevance to whether the Plaintiffs were properly paid or whether it is appropriate to pierce the corporate veil. Mr. Khalil has been sued in his individual capacity and even though he believes it to be inappropriate, he still has to pay his attorneys to defend him. Assuming he has done so, there is nothing suspicious about taking out a loan to do so. In addition, these questions are directed at a clear pain point for the deponent as seen from his response.

E. "…[Y]ou're not going to answer any questions about your personal finances. Correct?"

● In the May deposition of Defendant S. Khalil, Mr. Levison asked whether Mr. Khalil had written a check from either Corporate Defendant for his personal expenses and he answered that question2* "No." Further questions about his personal finances are unnecessary.

● Even so, this is not an unanswered question (and frankly it is not an appropriate question). If Mr. Levison had a question about personal finances, he should have asked it and only then complained that he did not get an answer, *if that were the case.* However, Mr. Khalil did not state that he would refuse to answer questions. He stated that he would refuse to answer questions that were unrelated to this case. Mr. Levison's failure to ask such a question leaves us without the ability to determine whether such a question would be answered.

F. "Sir, do you own any residential properties?" and "So you're refusing to answer any questions about personal properties?"

● Mr. Khalil's residential properties are again not relevant to this case and are a specific pain point. Moreover, the Court's email on May 25, 2021, was clear that the individual Defendants did not have to give their addresses and given that Plaintiffs used their personal mortgages as exhibits, that is clearly where this questioning would lead. But

[6] Defense counsel concedes that he asked his client to answer the question for the sake of avoiding additional conflict, but does not concede that the question was at all appropriate.

again, whether they own residential or personal property is not relevant in any way to what the Plaintiffs were or were not paid, nor relevant to a veil piercing theory, particularly given that Mr. Khalil already testified that he did not take any money from the corporate defendants in this case to pay his own expenses (and several other deponents have testified that no money ever went from the Corporate Defendants to the Khalils or anyone else in Florida, but rather was only used to pay corporate expenses.). In any event, Mr. Levison was well aware that he would get Mr. Khalil to state that he would not answer questions about personal properties because he knew it to be a pain point. But the fact is that no matter how inappropriate such questions would be, he made no attempt to ask anything beyond the first question.

G. "Sir, do you own any commercial properties?"

- This question was answered. "No."

H. "Sir, do you have any mortgages currently outstanding?"

- Plaintiffs have not worked for the Corporate Defendants in more than three years. Mr. Khalil's current mortgages cannot possibly hold any relevance to how Plaintiffs were paid or to a veil piercing theory, and Mr. Levison knows it. Even if the question had been whether Mr. Khalil had any mortgages during the underlying dates of the case when Plaintiffs claim that they were not paid. Plaintiffs made no attempt to connect such a question to the monies of the Corporate Defendants in this case. Again, Mr. Khalil had already answered that he did not use any money from the Corporate Defendants to pay any of his personal expenses, including mortgages. Furthermore, the testimony from several different sources has repeatedly been that because the Corporate Defendants were not making money, no money came from them to anyone in Florida. All corporate money was used to pay corporate obligations including payroll and inventory.

I. "…[O]ther than yourself, do you declare anyone as a source of income for your household on your tax returns?"

- While this is unquestionably another pain point – going after anyone's spouse would be – it is again neither a question for which the deposition was reopened nor remotely related to the issues in this case.

Plaintiffs also complain of other areas where they did not get answers by simple citation to the depositions, leaving it to Defendants to identify and explain. For Moeen Khalil these include

239:18-241:4 seeking this witness' preparation to answer 30(b)(6) questions when he was not identified as a 30(b)(6) witness.

281:24-282:21 seeking to obtain Mr. Khalil's social security number which is invasive and not relevant to any issue. To the extent that Plaintiffs could identify an issue for which it is relevant, a less invasive means of getting to that information could be had.

They include for Saed Khalil:

155:4-9 seeking to know who is paying his legal fees. Again. Mr. Khalil has already said that he has taken no money from the Corporate Defendants (as have several other deponents). That he must defend this case is just another pain point.

166:5-10 and 167:10-168:10 seeking to know what legal services this witness was provided by attorney Michael Marino. Counsel knows that Mr. Marino filed articles of incorporation for non-Defendants in this case and is asking why Mr. Marino became the registered agent for those non-Defendants. (He was not the registered agent for any Defendant in this case.) Again, this comes nowhere close to any question for which Defendant sought and was denied a protective order. It also bears no resemblance to any issue in this case.

168:24-170:2 "Sir, does your spouse work outside the home?"[7] Going after a person's spouse would be a pain point for anyone. Mr. Khalil's wife is not a Defendant in this case and there is no evidence and no basis to believe that she had anything to do with the case. Even if Plaintiffs were arguing to pierce the veil as to her (and she is not an owner of either Corporate Defendant), there is no path from whether she works for someone else to showing that she received money from the Corporate Defendants. (She never worked for either Corporate Defendant and an affirmation to that fact would have been offered if the issue had been raised in a 37.2 discussion.)

178:8-179:10 "Where do you bank?" and 213:4-6 "How many personal bank accounts do you maintain?" Mr. Khalil's personal bank accounts are again personal and have nothing to do

[7] The question is again wholly inappropriate, but the length of transcript reflects Defense counsel's effort to get the witness to answer the question to avoid further disputes.

with any issue in this case. It is money coming from the Corporate Defendants which would relate to any veil piercing argument. This is not even a question about a deposit into his accounts from the Corporate Defendants. Mr. Khalil's and his wife's personal banking is simply a pain point.

186:8-187:7 "Okay. How do you support yourself? "Plaintiffs have not been prejudiced by Mr. Khalil's failure to answer this broad question. Further questions about personal loans might go to cash needs, but beyond the fact that they were not the purpose for which the deposition was reopened, counsel has done nothing to connect the questions to his theories in the case.

187:11-14 "[H]as Mad Concept taken out any loans?" This is a question aimed at a company that did not even exist during the relevant time period to this case and is not a Defendant. It is not limited and ambiguous in nature in that the Defendant would have to answer that when Mad Wireless takes inventory and pays for it later it is taking a kind of loan.

192:7-10 seeks information about family members on payroll of other companies he owns. No 37.2 discussion was had on any of these questions, but as the answer is "no". Had the issue been raised before this motion, Defense Counsel would have agreed to provide a simple sworn statement to the point. The problem during the deposition is that by this point, the witness had been pounded so badly with questions aimed at his family that he simply responded negatively to all of them.

192:15-193:15 "What was your greatest source of income in 2014?" This section of questioning goes on to ask the same question about other years. Plaintiffs already know that Defendant Khalil did not receive a penny from the Corporate Defendants. There is no value in asking where he got his best income (which goes beyond any dealings with the defendant corporations) whether it was from the sale of Microsoft stock, an inheritance, one of his other

businesses, or anything else. This is again aimed at the witness' personal finances without any need other than to press at pain points.

195:22-196:15 "In 2021, what is your most profitable business?" Where Mr. Khalil is earning money in 2021 can have absolutely no relevance to any issue in this case, including any issue with respect to a veil piercing theory of two Corporate Defendants which have been closed for more than three years. The same can be said for 2019, but even going back to the period when those corporations existed, there is no suggestion of a connection to the Corporate Defendants. It is purely a question about this witness' personal finances.

205:3-13 "What is your wife's name?" This is yet another question aimed at a pain point, Mr. Khalil's family. This is another example of Plaintiffs' improperly using the discovery process to pressure the Defendants into settlement.

213:24-215:8 "What dividends did you receive in 2020?" While it is true that paying oneself dividends is relevant to piercing the corporate veil, the questions were not directed toward the Corporate Defendants. They relate to a time after the corporate defendants had closed.

219:12-219:23 "Do you invest in any stocks or other type of money market or anything like that?" Mr. Khalil's choice of stocks is not probative of any issue in this case. Like many other questions it is prurient at best and intended for no other purpose than to press pain points at worst.

Having reviewed each and every question about which Plaintiffs complain, it is clear that they have suffered no prejudice; indeed, even beyond the fact that they were well outside the scope of the Court ordered deposition, most were inappropriate for a myriad of reasons. Plaintiffs' motion should therefore be denied.

**Plaintiffs Are Not Using Discovery to Obtain Evidence, They Are Using it to Pressure Defendants into Settlement**

Plaintiffs' counsel have not been subtle that they are using discovery to pressure these individual Defendants into a settlement with demands that repeatedly address, not on the merits of the case, but on the cost of discovery and litigation.

During his deposition, Plaintiffs asked Saed Khalil (Plaintiffs' Ex. 4):

So you understand that there was a sanction entered by the Judge against two corporate defendants in this case *** Do you understand that those companies have been ordered to pay my legal fees…as well as costs to re-depose the corporate reps.?" 153:2-13 "Do you know what a sanction is? … Do you know what money penalty is? … The word sanction. I'm just asking, You ever use that word in your common usage?" 154:3-16.

Plaintiffs were even more direct with Moeen Khalil's. At one-point in his deposition Plaintiffs introduced as an exhibit, a filing in a totally unrelated FLSA case, *Rodriguez et al., v. The Professionals, Inc., et al,* 19-cv-0289 (none of the same parties, none of the same attorneys), and asked Moeen Khalil questions about it. 284:5.

The *Rodriguez* document was related to the settlement in that case. Plaintiffs' counsel explained to Defendants' counsel (not on the record in the deposition) that the settlement in *Rodriguez* had resulted in a total recovery of $20,580 for the four plaintiffs and $72,500 in fees for the plaintiffs' attorneys. Plaintiffs' attorneys added that, so far, they had 1,100 hours in the case, i.e., at their $450 per hour billing rate, they would be seeking fees of $495,000.

On May 13, 2021, Plaintiffs sent an email regarding settlement discussions: "…your clients will have to pay at least $... to $... in their own legal fees to defend against this case through discovery and motion practice. That amount will be even higher to defend this matter through trial."

On October 8, 2021, Plaintiffs sent an email stating, "We are hopeful now that the bulk of oral discovery is complete and in light of Judge Jantz's recent ruling [finding sanctions appropriate with respect to the costs of the 30(b)(6) deposition] that your client will now be more willing to engage in good faith settlement negotiations." The settlement demand itself began by using the Court's October 5 order as pressure.

On December 10, 2021, Plaintiffs sent an email stating, "At this point, we believe this litigation will become even more contentious as motion practice amps up and parties evaluate summary judgment. Therefore, we thought we should ask whether there is any appetite on the part of Defendants to resolve this matter."

**The Depositions Were Abusive**

The Court allowed Plaintiffs one hour for each deposition. Plaintiffs should have been able to re-ask the questions for which a protective order was denied and do any follow-up questions in far less time. The issue is 12 specific questions and their follow up. But that is not what these depositions have been about.

**Privileged Communications**

"Since May 27, 2021, have you spoken with Aaron Maduff?" "How any times have you spoken to your lawyer, Aaron Maduff, since May 27, 2021?" With further questions about whether they were on the phone, in person, or video-conferenced. 173:8-174:6 "Have you had email communications with any of your lawyers related to this lawsuit since May 27, 2021?" "And what documents have your lawyers sent to you since May 27, 2021?" 206:9-17. That a conversation was had is not privileged (which Mr. Levison seemed not to recognize during the depositions of

Wilfredo Rivera or Datisha Hunter, directing them not to answer). However, Mr. Levison then continued to go broadly into those conversations. Defendants' counsel instructed the Khalils to answer the question with respect to anything directly related to the depositions, but go no further. This of course led to questions about whether the witness understood the difference between the lawsuit and the deposition. Clearly conversations between the start and end of the deposition which are related to the deposition are not privileged. *Plaisted v. Geisinger Med. Ctr.*, 210 F.R.D. 527, 535 (M.D. Pa. 2002 (internal quotations omitted). *Trombley v. Wisconsin Central, LTD*, 2017 WL76952, the Court, first (citing *L.M. Ins. Corp. v. ACEP, Inc.,* 275 F.R.D. 490, 491 (N.D.Ill. 2011)). But communications had which are not related to the deposition remain privileged. *Id.*

WHEREFORE, Defendants respectfully request this Court DENY Plaintiffs' Motion for Sanctions Against Moeen Khalil and Saed Khalil for not Obeying the October 5, 2021, Order.

Respectfully submitted,

By: /s Daniel S. Gajda
One of Defendants' attorneys

Daniel S. Gajda
Attorney No. 6328491
Maduff & Maduff LLC
312-276-9000
dsgajda@madufflaw.com

**CERTIFICATE OF SERVICE**

By my signature below, I hereby certify that on December 28, 2021, I electronically filed the attached Defendants Moeen and Saed Khalils' Response to Plaintiffs' Motion for Sanctions with the Court's online ECF system that will send a copy to counsel of record.

Respectfully Submitted,

By: /s Daniel S. Gajda

Daniel S. Gajda
Attorney No. 6328491
Maduff & Maduff LLC
312-276-9000
dsgajda@madufflaw.com