## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**DATISHA HUNTER, et al.,**

**Plaintiff,**

**v.**

**No. 18 CV 980**

**Magistrate Judge Beth W. Jantz**

**WIRELESSPCS CHICAGO LLC, et al.**
**Defendants.**

## MEMORANDUM OPINION AND ORDER

Plaintiffs Datisha Hunter, Latricia Hunter and Wilfredo Rivera (collectively, "Plaintiffs" or "named Plaintiffs") filed this putative class and collective action against Defendants WirelessPCS Chicago LLC, Sky Net Wireless IL, LLC, Moeen Hasan Khalil, and Saed Khalil (collectively, "Defendants") for claimed violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq.* ("IWPCA"), and various local ordinances. [Dkt. 1, Compl.] Before the Court is Plaintiffs' renewed motion for conditional certification and the issuance of notice pursuant to 29 U.S.C. § 216(b).[1] [Dkt. 194, Pls.' Mot.] For the reasons that follow, Plaintiffs' motion is granted in part and denied in part.

---

[1] Plaintiffs were granted leave to file a third amended complaint while the conditional certification motion was pending. [*See* dkt. 297.] Because the proposed third amended complaint does not differ in relevant respects from the second amended complaint for purposes of conditional certification, the Court's reference to the second amended complaint herein applies with equal force to the third amended one.

**BACKGROUND**

Plaintiffs were each employed as sales clerks at various Chicagoland MetroPCS franchise locations, where they sold cellular phone products and services.  [Dkt. 178, Defs.' Answer ¶ 31.] Plaintiffs allege that they were jointly employed by Defendants, and that Defendants willfully violated the FLSA and state and local laws by failing to pay them and other similarly situated employees minimum wages for all time worked, and failing to pay overtime wages for all hours worked over forty (40) in individual workweeks.  [Dkt. 175, Second Am. Compl. ¶¶ 84-92, 93-104.]  Specially, Plaintiffs contend that although they were sometimes paid appropriate regular wages for their work, at other times their rate of pay was not as high as minimum wage.  [*Id.* ¶ 46.] Plaintiffs further allege that they worked off-the-clock hours (*i.e.*, time for which they were not compensated), that their hours were not consistently tracked and compensated correctly, and that Defendants unlawfully deducted money from their wages[2], resulting in payments of less than the applicable minimum wage.  [*Id.* ¶¶ 34-40, 46, 53-54, 66, 77, 133-36.]  Plaintiffs purport to bring their claims on behalf of all similarly situated current and former employees of the 10 MetroPCS franchise locations in Illinois that Defendants operated, estimating there may be around 100 such individuals.  [*Id.* ¶¶ 1, 2, 84-92, 93-104; Pls.' Mot. at 6.]

Plaintiffs move pursuant to 29 U.S.C. § 216(b) for conditional certification and notice of the following two collectives:

---

[2] Plaintiffs' IWPCA unlawful deductions claim is based on the allegation that Defendants made deductions from Plaintiffs' pay without their written authorization and that were not otherwise authorized by the IWPCA, and Plaintiffs additionally argue that pay deductions resulted in payment of less than the minimum wage.  [*See* Second Am. Compl. ¶¶ 133-36; Pls.' Mem. at 4-5.]  Plaintiffs do not specify the reasons for which Defendants made the alleged deductions.  [*See id.*]  It appears from the named Plaintiffs' affidavits, however, that they allege that at least some deductions were taken without their permission for drawer shortages in the stores or pay advances. [*See* D. Hunter Aff. ¶¶ 17-23; L. Hunter Aff. ¶¶ 19-21; Rivera Aff. 16-24.]

*Minimum wage collective*

> All individuals employed by Defendants in Illinois to sell cell phones, cell phone accessories, and cell phone services, regardless of the specific job title or titles used to describe such individuals in Defendants' data systems during the Class period who were not paid minimum wages for all time worked ("FLSA Minimum Wage Collective").

[Pls.' Mot. at 3.]

*Overtime collective*

> All individuals employed by Defendants in Illinois to sell cell phones, cell phone accessories, and cell phone services, regardless of the specific job title or titles used to describe such individuals in Defendants' data systems during the Class period who worked more than 40 hours in one or more individual workweeks and were not paid appropriate overtime ("FLSA Overtime Collective").

[*Id.* at 3.]

This is not Plaintiffs' first motion for conditional certification, and a review of the history of this case is important to the consideration of the current motion. Plaintiffs first moved for conditional certification on April 18, 2018, shortly after the filing of their initial complaint, as is typical in FLSA putative collective actions. [*See* dkt. 15.] On May 2, 2018, the Court set a class discovery schedule and briefing schedule on Plaintiffs' motion. [Dkt. 23.] Both were subsequently extended to accommodate class discovery and corresponding discovery disputes. [Dkt. 49.] By August 2018, the parties turned their attention to the possibility of a class-wide settlement, and they requested and received a referral to the Magistrate Judge to assist in that endeavor. [*See, e.g.*, dkt. 65, 69.]

A settlement conference was held on October 15, 2018, and the parties consented to the jurisdiction of the Magistrate Judge that same day. [Dkt. 88, 89.] In efforts to maximize the possibility of settlement, the Court stayed formal discovery two days later, and presided over the informal exchange of information in connection with settlement discussions for the next several

3

months.  [Dkt. 92, 93, 96, 100.]  On March 7, 2019, the Court struck by agreement Plaintiffs'
motion for conditional certification, without prejudice to its refiling if the parties were unable to
reach a settlement.  [Dkt. 100.]  On May 24, 2019, the Court recruited a second Magistrate Judge
to preside over further settlement negotiation sessions, again noting the parties' agreement to
forego formal discovery pending the outcome of their mediation efforts.  [Dkt. 109, 110.]

Several months of further settlement negotiations followed, including the court-facilitated
informal exchange of additional information, and at least six settlement-related conferences with
the recruited Magistrate Judge.  [*See* dkt. 113, 115, 116, 117, 120, 122.]  Despite these efforts,
however, by December 12, 2019, the Court concluded that settlement was not "a realistic
possibility at this juncture [and that it was not] a productive use of the parties' and the Court's time
to focus exclusively on the possibility of settlement at this time."  [Dkt. 122.]  The Court therefore
terminated settlement proceedings on December 16, 2019.  [*See* dkt. 123.]

Litigation resumed thereafter, and in January 2020, the parties proposed a new discovery
schedule.  [*See* dkt. 126, 127.]  The case was reassigned to the undersigned the next month, and
discovery motion practice resumed shortly thereafter.  [*See* dkt. 128, 130.]  A schedule was
subsequently set and extended for the re-filing of Plaintiffs' motion for conditional certification.
[*See* dkt. 157, 187.]  On April 8, 2021, Plaintiffs filed their renewed motion for conditional
certification.  [Pls.' Mot.]  The Court then set a briefing schedule, which was extended three times
upon Defendants' request, and was eventually completed on August 10, 2021.  [Dkt. 195, 199,
208, 230.]  In addition, because the parties' extensive discovery disputes had resulted in repeated
depositions of Defendants as well as the named Plaintiffs, supplementation of the conditional
certification briefs was allowed.  [Dkt. 257.]  Plaintiffs' supplement was filed on December 31,

2021 [dkt. 283, Pls.' Suppl.], and Defendants' supplement was filed on January 7, 2022 [dkt. 285, Defs.' Suppl.], a little over two months ago.

## LEGAL STANDARD

Section 216(b) of the FLSA "gives employees the right to bring their FLSA claims through a collective action on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)). A collective action differs from a class action under the Federal Rules of Civil Procedure in that unnamed plaintiffs must opt *in* to a collective action to be bound by it, whereas unnamed plaintiffs in a class action must opt *out* to avoid being bound. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013). District courts have discretion in managing collective actions because the FLSA does not detail specific procedures for certifying a conditional class or authorizing collective action notices. *See Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 170-174 (1989); *accord Alvarez*, 605 F.3d at 449.

"The majority of courts in this circuit have adopted a two-step process for determining whether an FLSA lawsuit should proceed as a collective action." *Soto v. Wings 'R US Romeoville, Inc.*, No. 15-CV-10127, 2016 WL 4701444, at *5 (N.D. Ill. Sept. 8, 2016) (internal quotation omitted); *accord Black v. P.F. Chang's China Bistro, Inc.*, No. 16-CV-3958, 2017 WL 2080408, at *3 (N.D. Ill. May 15, 2017); *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (collecting cases). Step one is the conditional certification stage, at which "[P]laintiffs need only make a factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021) (internal quotation omitted); *see also Osterholt v. Corepower Yoga, LLC*, No. 16 CV 5089, 2017 WL 2180483, at *1 (N.D. Ill. May 18,

2017). Although this "modest factual showing" cannot be satisfied simply by "unsupported assertions," it remains "a low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Kurgan v. Chiro One Wellness Centers LLC*, No. 10-CV-1899, 2014 WL 642092, at *2 (N.D. Ill. Feb. 19, 2014) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)); *accord Jimenez v. Chicago Soccer, Inc.*, No. 13 CV 7462, 2014 WL 274149, at *2 (N.D. Ill. Jan. 24, 2014). The merits of a case are not decided at the first step, and the Court does not "weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant." *Bergman v. Kindred Healthcare, Inc.,* 949 F. Supp. 2d 852, 855-56 (N.D. Ill. 2013) (citation omitted).

This modest step one standard, however, "has sometimes been supplanted by a more rigorous examination standard if there has been more extensive discovery allowed the plaintiff." *Id.* at 856. This "intermediate" standard, while more stringent than the lenient first-step standard, is still less rigorous than the second-step decertification standard. *Kurgan*, 2014 WL 642092, at *3. Under this "intermediate" approach, "[B]oth sides' evidentiary submissions [are] considered in determining whether there is a group of similarly situated employees who may be discovered by sending out an opt-in notice." *Bergman*, 949 F. Supp. 2d at 856; *Kurgan*, 2014 WL 642092, at *3. "In evaluating each side's submissions, it must be kept in mind that, despite the discovery that has been allowed, defendants still have greater access to evidence than plaintiffs and plaintiffs' modest showing need not be conclusive." *Bergman*, 949 F. Supp. 2d at 856. "So even if a stricter standard is applied, Plaintiffs need only make a 'modest plus' factual showing that there is a group of potentially similarly situated plaintiffs that may be discovered by sending opt-in notices." *Kurgan*, 2014 WL 642092, at *3.

The second and later step in a collective proceeding comes after any opt-ins have appeared and discovery has been completed. Once it is known which employees will be part of the collective, "the defendant is given an opportunity to move for decertification. At that stage, if requested to do so, the court makes a more rigorous examination of the facts relating to whether or not the case may appropriately continue as a collective action." *Bergman*, 949 F. Supp. 2d at 856; *see also In re New Albertsons, Inc.*, 2021 WL 4028428, at *1.

## DISCUSSION

Plaintiffs seek step one conditional certification of the two collectives described above: one for FLSA minimum wage claims, and another for FLSA overtime claims. Plaintiffs' theory of FLSA violation is that they and other individuals employed at Defendants' MetroPCS franchise locations were not always paid for all of the hours they worked and sometimes paid below the minimum wage or the premium overtime wage because Defendants took improper deductions from their paychecks and required off-the-clock work. [*See* Second Am. Compl.; Pls.' Mot. at 3-7.] Plaintiffs also seek an order equitably tolling the statute of limitations for the claims of the putative opt-ins from the filing of Plaintiffs' first conditional certification motion on April 18, 2018, to the present. [Pls.' Mot. at 12-14.] Defendants oppose conditional certification on the merits, and argue that equitable tolling should not apply. [Dkt. 251, Defs.' Resp. at 5-15.] The Court addresses each issue in turn.

### *Conditional Certification*

The discovery conducted thus far warrants application of the intermediate "modest plus" standard of review to Plaintiffs' motion. *See Osterholt*, 2017 WL 2180483, at *2; *Kurgan*, 2014 WL 642092, at *3. Discovery has been underway since the parties' settlement negotiations ended in December 2019, including written and oral discovery resulting in a significant number of

discovery disputes. [*See, e.g.,* dkt. 32, 94, 109, 132, 146, 157, 160, 177, 183, 185, 190, 193, 197, 230, 257.][3] Indeed, as mentioned above, supplemental briefs on Plaintiffs' motion were allowed specifically to permit the presentation of deposition testimony obtained both from Plaintiffs and Defendants following the Court's ruling on a set of the parties' cross discovery motions. [*See* dkt. 257, Oct. 5, 2021 Order at 10.] Accordingly, the Court considers the evidence submitted both by Plaintiffs and Defendants, while remaining mindful of the fact that Defendants still have greater access to evidence at this stage than Plaintiffs. *See, e.g., Osterholt*, 2017 WL 2180483, at *2; *Bergman*, 949 F. Supp. 2d at 856.

Nevertheless, and despite the age of this litigation, this is only the first step in the collective certification process. It is not intended to definitively resolve the question of whether this case is appropriate for collective treatment, but rather to assess whether it is appropriate to provide court-approved notice, to others who may be similarly situated, of the opportunity to join the case. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("The sole consequence of conditional certification is the sending of court-approved written notice to employees[.]"); *In re New Albertsons, Inc.*, 2021 WL 4028428, at *2 ("[C]onditional certification and authorization of notice to others who may be similarly situated is a preliminary, non-final step that does not adjudicate any party's rights.")

Plaintiffs allege that they and other employees had their wages deducted without authorization and were required to work "off-the-clock"— first, for a period of time when they were initially hired but lacked credentials to access a computerized timekeeping system, and second, both before stores opened and after they closed, when they were required to work but

---

[3] Indeed, discovery is now closed as to the named Plaintiffs. [*See, e.g.,* dkt. 190, 205, 225, 230, 257, 269.] As Defendants acknowledge, however, fact discovery arising from the addition of any opt-in plaintiffs remains to be conducted. [*See* dkt. 278.]

directed not to log in and account for their time.  [Second Am. Compl. ¶¶ 46, 53, 54, 64, 64; Pls.'

Mot. at 3-7.]  Plaintiffs further allege that they and other employees were not always paid for their

time, and that they routinely worked more than 40 hours per week without compensation at the

overtime rate.  [Second Am. Compl. ¶¶ 56, 57, 85-92, 93-104; Pls.' Mot. at 3-7.]

To support their allegations, Plaintiffs submit several affidavits, some payroll

documentation, and deposition testimony.[4]  They first submit affidavits from each of the named

Plaintiffs, who attest that they and other employees logged into and out of a computerized

timekeeping system in conjunction with opening and closing of the stores, and that each believed

that Defendants did not accurately provide the payroll company with their actual hours worked or

commissions earned.  [Dkt. 194-1, D. Hunter Aff. ¶¶ 10, 11, 17, 18; dkt. 194-2, L. Hunter Aff. ¶¶

10, 11, 17, 18; dkt. 194-3, Rivera Aff. ¶¶ 9, 10, 14, 15.][5]

---

[4] Plaintiffs represent in their motion that they "know of at least three other employees whose testimony would support their contentions," but they identify no names or other evidence to support their assertion.  [See Pls.' Mot. at 9.]  Such statements are disregarded.  See, e.g., United States v. Stevens, 500 F.3d 625, 628-29 (7th Cir. 2007) ("[A]rguments in a . . . brief, unsupported by documentary evidence, are not evidence."); Campania Mgmt. Co. v. Rooks, Pitts & Poust, 290 F.3d 843, 853 (7th Cir. 2002) ("[I]t is universally known that statements of attorneys are not evidence."); Lee v. Chicago Youth Centers, 69 F. Supp. 3d 885, 888 (N.D. Ill. 2014) (collecting cases) ("[I]t is basic that unsupported statements of lawyers in briefs are not evidence, do not count, and are given no weight.").

[5] Plaintiffs also attempt to support some allegations, including that Defendants did not provide accurate information to their payroll company, by citation to the opinion of their counsel, submitted in an affidavit.  [See Pl.'s Mot. at 5; dkt. 194-4, Choate Aff. ¶¶ 4-5.]  Plaintiffs' counsel is not a witness with personal knowledge, her opinion of the record is no substitute for evidence, and the Court therefore does not consider this affidavit in considering this motion.  See, e.g., Nw. Nat. Ins. Co. v. Baltes, 15 F.3d 660, 662 (7th Cir. 1994) (affirming decision to strike affidavit of party's attorney not based on personal knowledge and not showing that "the lawyer is 'competent to testify to the matters stated'"); DF Inst., LLC v. Dalton Educ., LLC, No. 19-CV-452-JDP, 2020 WL 4597122, at *3 (W.D. Wis. Aug. 11, 2020) (attorney's declaration that a document contains trade secrets is not evidence of the same where the attorney "doesn't have the foundation to explain the importance of the document.").

Plaintiff Datisha Hunter further attests that she was not given login credentials or other means of recording her time when she was first hired, that her paychecks usually reflected less time than she had worked, and that she regularly worked over 40 hours but rarely was paid overtime or for the actual time she worked. [D. Hunter Aff. ¶¶ 9, 13-15.] Additionally, she attests that she never saw a payroll deduction policy while working for Defendants, but that Defendants made 40 deductions of her pay totaling about $2,700, most of which were unauthorized. [*Id.* ¶¶ 17-23.] Plaintiffs submit payroll records they say demonstrate that such deductions resulted in payment to Datisha Hunter of less than the applicable minimum wage. [*Id.* at Ex. A.]

Plaintiff Latricia Hunter similarly attests that, for the six months she worked for Defendants, she regularly worked beyond store hours, frequently working an additional 15 minutes beyond store hours, but was not paid for this time. [L. Hunter Aff. ¶¶ 5-8, 12.] She further attests that she and her co-workers utilized a computer timekeeping system to record their time but that Defendants did not give her login credentials until about one month after she started working for them, her paychecks usually reflected less time than she worked and did not always include her earned commissions, and she regularly worked over 40 hours but rarely was paid overtime or for the actual time that she had worked. [*Id.* ¶¶ 10-12, 14-16.] She testified in deposition that she routinely performed opening duties for 30-45 minutes before clocking in. [Dkt. 283-5, L. Hunter Dep. at 155:15-157-13.] Finally, she attests that she never saw a payroll deduction policy while working for Defendants and that she never authorized any payroll deductions, but that Defendants withheld $50.00 from her paycheck on at least one occasion without her knowledge or authorization. [L. Hunter Aff. ¶¶ 19-21.]

Like Plaintiffs Datisha and Latricia Hunter, Plaintiff Wilfredo Rivera attests that that he and his co-workers utilized a computer timekeeping system to record their time, but that

Defendants did not give him login credentials or any other means of recording his time until about a month after he started working for them, his paychecks usually reflected less time than he worked and did not always include his earned commissions, and he regularly worked over 40 hours but rarely was paid overtime or for the actual time that he had worked. [Rivera Aff. ¶¶ 8-10, 12, 13.] As with both Hunters, Rivera also attests that he never saw a payroll deduction policy while working for Defendants, and that although he had authorized certain deductions from his pay for cash advances, the "vast majority" of deductions from his pay were taken without his authorization. [*Id.* ¶¶ 16-23.] Rivera testified in deposition that he had been instructed by "all of upper management" not to clock in when he first arrived at work but only upon the store's actual opening and that it was considered to be "stealing time if [he] were to clock in before the doors opened." [Dkt. 283-6, Rivera Dep. at 122:10-123:07.] Rivera explained that he was told this by "Abigail, Mo. G, Adam . . . [and] Ali." [*Id.* at 242:01-244:13.][6]

Additionally, Plaintiffs submit the Rule 30(b)(6) deposition testimony of WirelessPCS Chicago and Sky Net Wireless IL, acknowledging a policy of requiring employees to be at work 15 minutes prior to the store's opening, and explaining that they delegated operation of the Chicagoland franchises—including the handling of employee schedules, the accuracy of timekeeping records, and the validity of wage deductions—to local "area managers." [*See* dkt. 283-1, Wireless Defs.' Dep. (Monroy) at 153:12-155:24; dkt. 283-2, Wireless Defs.' Dep. (Ittayem) at 46:02-48:12, 101:03-103:19.] Importantly, although Plaintiffs argue in their briefing that Defendants "confirmed that their policy mandated employees worked [*sic*] off-the-clock," the

---

[6] Other than "Mo. G," who was subsequently identified in an affidavit as an area manager for WirelessPCS Chicago and Sky Net Wireless IL, Mohammed Ghaben [*see* dkt. 283-8, Ghaben Aff. ¶ 4], Plaintiffs do not provide the full names or positions of the people Rivera testified had directed him to work off the clock. [*See* Pls.' Mot.; Pls.' Suppl.]

testimony that Plaintiffs cite for this point reflects only that employees were expected to begin and end work beyond the hours that stores were open to the public, and not that this time was meant to be uncompensated. [*See* Pls.' Suppl. at 2-3, citing Wireless Defs.' Dep. (Ittayem) at 102:13-103:06.] Furthermore, Plaintiffs do not identify the stores or area in which they worked or the area manager(s) with authority over those stores. [*See* Pls.' Mot. at 1-7; Pls.' Suppl. at 1-5.]

Finally, Plaintiffs submit the affidavit of Mohammed Ghaben,[7] a former area manager for WirelessPCS Chicago and SkyNet Wireless IL, who explains that: (1) employees routinely called him among other nicknames, "Mo. G;" (2) Chicagoland employees of WirelessPCS Chicago and Sky Net Wireless IL regularly worked beyond store hours and used a computer system to track their time; and (3) Defendants set employee hours and store hours, instructed him to "hold workers accountable [for] drawer shortages," and directed him to set up a corporation Defendants funded to facilitate paying their employees. [Ghaben Aff. ¶¶ 4, 8-21.] Notably, however, Ghaben does not attest that employees who worked beyond store hours were not compensated for that work, or that holding workers accountable for drawer shortages was done without their consent or resulted in payment at less than the minimum wage.[8] Ghaben attests that none of the WirelessPCS Chicago and Sky Net Wireless IL locations had any required posters regarding applicable minimum wage. [*Id.* ¶ 22.] Neither Plaintiffs nor Ghaben explain whether he was Plaintiffs' area manager, or

---

[7] For the same reasons set out in this Court's February 4, 2022 order [dkt. 292] denying Defendants' motion for extension of time to depose Mohammed Ghaben or to strike his testimony, Defendants' motion to strike Ghaben's affidavit [dkt. 286] is denied.

[8] Although Plaintiffs argue in their briefing that Ghaben "confirmed that employees were expected to work off-the-clock," his actual affidavit says only that employees worked before and after store hours; it says nothing about whether that work was on or off of the clock, or otherwise impacted minimum or overtime wage pay. [*Compare* Pls' Suppl. at 3 *with* Ghaben Aff. ¶¶ 18, 19.]

indeed what area he managed, and whether any others managed that same area.[9]  [*See* Pls.' Suppl.; Ghaben Aff.]

According to Defendants, Plaintiffs' evidence fails to make the requisite showing to conditionally certify either proposed collective for several reasons, as follows.  Plaintiffs' respective declarations are both too vague as to other employees and too individualized as to their own underpayment claims.  [*See* Defs.' Resp. at 7-12.]  Defendants argue that the only reference to other employees in each named Plaintiff's affidavit is found in statements that the affiant "and other employees" logged into a computerized time system as part of their store opening process at the start of their shifts, and logged out of the system as part of store closing at the end of their shifts.  [*See id.* at 8-9.]  Defendants further argue on this point that Plaintiffs do not indicate what these "other" employees' positions were, in which stores they worked, what their duties entailed, whether they were salaried or hourly, whether they had supervisors common to Plaintiffs, or when they worked for the Defendants.  [*Id.* at 9.]  Defendants contend that this lack of particularity renders the statements lacking in personal knowledge, and insufficient to support Plaintiffs' motion.  [*Id.*]  Moreover, Defendants say, given the infirmities in Plaintiffs' affidavits, and the fact that Defendants testified that employees were expected to be paid beyond store hours and Defendants' timekeeping records demonstrate Plaintiffs' clock in and out times were beyond store hours, Plaintiffs present "no evidence" that any timekeeping policy violated the FLSA or that Plaintiffs were not paid for their time.  [*Id.* at 10;  Defs.' Suppl. at 2 and Ex. A; Wireless Defs.' Dep. (Ittayem) at 101:03-103:19.]  Finally, Defendants contend, because Plaintiffs' claims are

---

[9] Regarding stores in the Chicagoland area, Ghaben attests only that during the time he worked as an area manager, he "regularly visited" them.  [Ghaben Aff. ¶ 17.]

based in part on deductions, the specifics of each employees' pay will be at issue, thus rendering proceeding as a collective action inefficient and improper. [Defs.' Resp. at 11; Defs.' Suppl. at 3.]

Upon consideration of the evidence and arguments, the Court concludes that Plaintiffs have made the "modest plus" factual showing sufficient to carry them past the first stage of the conditional certification process, although just in part. The affidavits and deposition testimony of the three named Plaintiffs, paired with their pay records and Defendants' testimony about how they conducted their business, make a sufficient showing that Plaintiffs and other employees—at the store(s) at which Plaintiffs worked—were subjected to the same practices and policies requiring them to perform certain tasks past store hours or incur payroll deductions, which may have resulted in payment below the federal minimum wage and/or overtime rate. Additionally, the fact that *all* of the named Plaintiffs attest to having had no means of recording their time for a period when they were first hired, and that they regularly worked more than 40 hours per week and rarely were paid overtime for such work, suggests that the alleged practice of underpayment was not limited to just one employee. [*See* D. Hunter Aff. ¶¶ 9, 13-15; L. Hunter Aff. ¶¶ 8, 9, 14, 16; Rivera Aff. ¶ 8, 13.] On the "modest plus" standard that must be satisfied at step one, it may be inferred that these practices were common to all employees at the store(s) where Plaintiffs worked. Plaintiffs' affidavits "[n]eed not be 'highly specific,' and 'it is not necessary for the [affiants] to provide such details as the dates and times they worked overtime hours for which they were not compensated." *Black*, 2017 WL 2080408, at *4 (internal quotations omitted).

Although conditional certification is warranted, however, Plaintiffs' definition of the collectives is too broad. First, they include no defined class period (remedy discussed further below). More fundamentally, however, Plaintiffs' evidentiary submissions suggesting that they are similarly situated to other employees are limited to Plaintiffs' observations and experiences at

the store(s) at which Plaintiffs worked. As Defendants correctly note, Plaintiffs submit no evidence to show, or other knowledge of, a centralized policy or practice requiring off-the-clock or otherwise uncompensated work resulting in payments of less than the minimum wage or overtime rate at all of Defendants' stores in Illinois. [*See* Def's Suppl. at 2.] On this issue, it is important to distinguish several points as between Plaintiffs' arguments and the actual evidence as submitted.

First, Plaintiffs argue that former Area Manager Ghaben "confirmed that employees were expected to work-off-the-clock." But his affidavit says only that employees worked beyond store hours—and is notably silent about whether employees were paid for that time or otherwise ever received less than wages due or the federal minimum wage. [*Compare* Pls' Suppl. at 3 *with* Ghaben Aff. ¶¶ 18, 19.]

Similarly, while Plaintiffs argue that the corporate defendants "confirmed [in their Rule 30(b)(6) depositions] that their policy mandated" off-the-clock work, the cited and surrounding testimony reflects that while it was expected that employees work beyond store hours, it was also expected that they be compensated for that time. [*Compare* Pls.' Suppl. at 2-3 (citing Wireless Defs.' Dep. (Ittayem) at 102:13-103:06) *with* Wireless Defs.' Dep. (Ittayem) 102:08-12; *see also* Defs.' Resp. at 2.] *See Kurgan*, 2014 WL 642092, at *3 ("both sides' evidentiary submissions are considered" under the intermediate "modest plus" standard).

Nor does Rivera's deposition testimony that he had been instructed by "all of upper management" that it was considered "stealing time if [he] were to clock in before the doors opened," [Rivera Dep. at 122:10-123:07], and that he was told this by "Abigail, Mo. G, Adam . . . [and] Ali," [*id.* at 242:01-244:13], permit an inference that similar conditions were faced by employees at other stores. His testimony provides no context for whether this practice extended

beyond the store(s) at which he worked, or who these named individuals were, other than "Mo. G" (Ghaben, discussed above), and Plaintiffs identify no evidence to otherwise bridge this gap.

Similarly, although Plaintiffs have had the opportunity to depose multiple corporate representatives of WirelessPCS Chicago and Sky Net Wireless IL, Plaintiffs' purported evidence about centralized management and operation of the Chicagoland stores is insufficient to extrapolate that what Plaintiffs experienced or observed at their store(s) also occurred at all of the other franchise locations. Plaintiffs provide no link between centralized control on the one hand, and the practice of off-the-clock or other unpaid work at any location beyond Plaintiffs' own observations at their own store(s). [*See* Pls.' Mot. at 3-12; Pls.' Suppl. at 1-5.] Moreover, as Plaintiffs highlight, corporate testimony reflected that "upper management" delegated operation of the Chicagoland franchises—including the handling of employee schedules, the accuracy of timekeeping records, and the validity of wage deductions—to local "area managers." [*See* Pls.' Suppl. at 3-5; Wireless Defs.' Dep. (Monroy) at 153:12-155:24; Wireless Defs.' Dep. (Ittayem) at 46:02-48:12, 101:03-103:19.] And Plaintiffs do not even identify the stores or area in which they worked, or the area manager(s) with authority over those stores. [*See* Pls.' Mot. at 1-7; Pls.' Suppl. at 1-5.]

In sum, because Plaintiffs' first step evidence provides insufficient support for including employees who worked at store(s) other than those where the named Plaintiffs worked, the Court therefore narrows the proposed opt-in collectives accordingly to only those store(s) at which the named Plaintiffs worked. *See, e.g., Black*, 2017 WL 2080408, at *10 (limiting scope of grant of conditional certification to only certain restaurant locations, where Plaintiffs failed to minimally show that alleged off-the-clock policy applied anywhere beyond the locations where Plaintiffs contended that they worked and had observed it); *DeMarco v. Nw. Mem'l Healthcare*, No. 10 C

397, 2011 WL 3510905, at *4 (N.D. Ill. Aug. 10, 2011) (collecting cases narrowing proposed collective based on limitations in step one showing, and explaining that, a "court may narrow the lead plaintiff's proposed opt-in class where the first-stage evidence provides no tangible support for including certain employees in the class"). Accordingly, Plaintiffs' minimum wage and overtime collectives will be certified, but limited to the store(s) at which the named Plaintiffs worked.

### *Defendants' Further Objections*

Defendants' additional objections to conditional certification of either collective are unpersuasive. First, despite the limitations in Plaintiffs' showing as discussed above, Defendants' contention that Plaintiffs offer no evidence of *any* FLSA violation or that they were not compensated for time worked is inaccurate. [*See* Defs' Suppl. at 2.] Plaintiffs have pointed to evidence that they had no means of recording their time for a period when they were first hired, that they were not compensated for all of the hours that they worked, and that they routinely worked more than 40 hours per week but were rarely compensated at the overtime rate. [*See* D. Hunter Aff. ¶¶ 9, 13-15; L. Hunter Aff. ¶¶ 8, 14-16; Rivera Aff. ¶¶ 8, 12-13; Rivera Dep. at 122:10-123:07, 242:01-244:13; L. Hunter Dep. at 155:15-157-13.] Each named Plaintiff also describes that they and other employees logged into and out of the computerized timekeeping system as part of store opening and closing procedures. [*See* D. Hunter Aff. ¶¶ 10, 11; L. Hunter Aff. ¶¶ 10, 11; Rivera Aff. ¶¶ 9, 10.] Each of the named Plaintiffs also attests that their wages were deducted without their knowledge or authorization, and Plaintiffs submit evidence to show that in the case of Datisha Hunter, those deductions resulted in payment below the minimum wage. [*See* D. Hunter Aff. ¶¶ 17-23 and Ex. A; L. Hunter Aff. ¶¶ 19-21; Rivera Aff. ¶¶ 16-23 and Ex. A.] Although Defendants may challenge the import of this evidence at a later stage, these affidavits

and deposition testimony are evidence sufficient to meet Plaintiffs' step one showing, albeit with the limitations discussed above.

This is so despite Defendants' argument that they paid Plaintiffs for all of their time (not just store hours) and Defendants' submission of timekeeping records showing that Datisha Hunter and Wilfredo Rivera clocked in and out at times different than posted store hours. [*See* Defs.' Resp. at 11-12 and Ex. D, E; Defs.' Suppl. at 2 and Ex. A.] Defendants' argument raises factual issues that are deferred until later in the litigation. *See Ivery v. RMH Franchise Corp.*, 280 F. Supp. 3d 1121, 1135 (N.D. Ill. 2017). Plaintiffs are not obliged to prove their claims in order to satisfy the relatively low burden of identifying other similarly situated persons to whom notice may be provided. *See id.* Although the Court considers Defendants' evidence, it does so with an eye towards determining whether Plaintiffs have demonstrated that similarly situated potential opt-in plaintiffs may exist—not whether Plaintiffs have sustained their substantive claims. *See Bergman*, 949 F. Supp. 2d at 855-56.

Second, notwithstanding Defendants' argument, a lack of specificity in Plaintiffs' affidavits as to when and how much they contend they were underpaid does not suggest a lack of personal knowledge rendering their evidence insufficient. Unlike in Defendants' cited case of *Mares v. Caesars Ent., Inc.*, No. 4:06CV0060 JDTWGH, 2007 WL 118877, at *3 (S.D. Ind. Jan. 10, 2007), each of the named Plaintiffs' affidavits in this case is based on each individual's personal knowledge as to what they and other employees did at work. [*See* D. Hunter Aff. ¶¶ 10, 11; L. Hunter Aff. ¶¶ 10, 11; Rivera Aff. ¶¶ 9, 10.] *Cf. Mares*, 2007 WL 118877, at *3 (statements based on affiant's "understanding" of policies and practices arising out of an alleged conversation with some other unidentified person was insufficient to establish personal knowledge). "Allegations in declarations need not be highly specific, and it is not necessary for the declarants

to provide such details as the dates and times they worked overtime hours for which they were not compensated." *Black*, 2017 WL 2080408, at \*4 (internal quotation omitted). Instead, "[T]he declarations need only allege facts sufficient to support ***an inference*** that he or she has actual knowledge about other employees' job duties, pay structures, hours worked, and whether they were properly paid." *Id.* (emphasis added). Here, Plaintiffs describe what they saw their co-workers do, and their affidavits sufficiently demonstrate their knowledge as to their own and their co-workers' practices of clocking in and out. *See id.* Defendants offer no reason to think that Plaintiffs would not have been in a position to see other employees clock in or out, or otherwise work at the store off of the clock. Although Plaintiffs' evidence might be thin, and much more will be needed at step two, Plaintiffs' evidence is sufficient to meet the "modest plus" burden at step one. *See Black*, 2017 WL 2080408, at \*4; *Ballou v. iTalk, LLC*, No. 11 C 8465, 2013 WL 3944193, at \*5 (N.D. Ill. July 31, 2013).

Further, while Defendants raise legitimate concerns about the individualized analysis of each potential opt-in plaintiff's circumstances, such arguments are not appropriately adjudicated at step one certification. *See, e.g., Ballou*, 2013 WL 3944193, at \*5 (collecting cases); *Soto*, 2016 WL 4701444, at \*9; *Jirak*, 566 F. Supp. 2d at 850. While the amount of compensated time each employee was allegedly denied or why/when certain deductions were made may vary, the practices Plaintiffs contend allegedly violated the FLSA (*i.e.*, working off the clock, or imposing unlawful deductions) does not. *See Ballou*, 2013 WL 3944193, at \*5 ("[C]ourts in this district have . . . rejected . . . arguments that collective actions should not be conditionally certified because they may later require a more individualized inquiry." (internal quotation omitted) (collecting cases)). It remains to be seen at a later stage whether Plaintiffs might avoid individualized issues and be

able to prove their claims by representative evidence that "would enable a rational determination of each class member's damages." *See Espenscheid*, 705 F.3d at 776.

Similarly, Defendants' argument regarding potential individual set-off issues based on a group chat message involving Rivera and various other employees which refers to "hold[ing] the deposits" is speculative and premature at this stage of the litigation. [*See* Defs.' Suppl. at 4.] In asserting that the topic of holding store deposits raises potential set-off issues that defeat the propriety of conditional certification, Defendants ask not only that the Court credit Defendants' interpretation of the particular evidence they cite, but also that the Court credit Defendants' prediction as to what Plaintiffs might argue in response. Such weighing of the evidence is inappropriate at step one certification. *See, e.g.*, *Ivery*, 280 F. Supp. 3d at 1137-38 (conditional certification is meant only to determine the size and contour of a potential collective and whether potential members are similarly situated, and not to resolve factual disputes or decide substantive issues going to the merits). In sum, although it is possible that individual issues will eventually predominate in their claims, Plaintiffs have sufficiently shown a common policy or practice affecting them and other similarly situated employees at their own store(s) such that conditional certification is appropriate.

Finally, contrary to Defendants' assertions, there is no adequacy of representation problem. Although Defendants specifically critique only two of the three named Plaintiffs, Defendants contend that all three are incapable of serving as representative plaintiffs in this case. [*See* Defs.' Suppl. at 5.] Specifically, Defendants argue that because Datisha Hunter repeatedly testified that she was unable to remember certain information and because she did not give "straight answers" in response to Defendants' deposition questions, she is "obviously incapable of providing representative testimony." [*Id.*] Defendants similarly assert that Rivera is "unable to testify for

20

himself let alone anyone else," although they appear to complain more of his counsel's numerous objections and instructions not to testify than to the testimony Rivera provided. [*Id.*] Regardless, Defendants present no authority to support their assertion that either the limits of Datisha Hunter or Rivera's memory or the manner in which they testified at deposition so taints each of them that a finding that they are incapable of serving as representative plaintiffs should be made in conjunction with conditional certification. [*See id.*] Such unsupported arguments are forfeited. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

Moreover, even if it were not forfeited, Defendants' challenge based on the named Plaintiffs' adequacy is inapplicable. "Most courts articulating the requirements for conditional certification of a collective action . . . have concluded that the FLSA does not incorporate Rule 23's adequacy criterion for conditional certification." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 573 n.14 (D. Md. 2012) (internal quotation and alteration omitted) (collecting cases); *see also Ballou*, 2013 WL 3944193, at *7; *Ivery*, 280 F. Supp. 3d at 1136-37 (rejecting similar adequacy argument and noting that, "[T]he FLSA requires only that the collective representative be 'similarly situated' to others in terms of the work performed.").

### Statute of Limitations & Equitable Tolling

Because the Court grants conditional certification, it next turns to Plaintiffs' request to equitably toll the limitations period as to putative opt-in plaintiffs. [*See* Pls.' Mot. at 12-14.] Under the FLSA, the statute of limitations continues to run for each potential plaintiff until he or she opts in to the lawsuit. *See Lucas v. JJ's of Macomb, Inc.*, 321 F. Supp. 3d 882, 885 (C.D. Ill. 2018). The FLSA requires that an action "be commenced within two years after the cause of action accrued," unless the violation was willful, in which case a three-year statute of limitations applies. 29 U.S.C. § 255(a). An FLSA lawsuit commences as to an individual claimant on: (1)

21

the date the complaint was filed if the claimant is specifically named as a party in the complaint and she or he files written consent to become a party plaintiff on such date; or (2) the date on which such written consent is filed. *See* 29 U.S.C. § 256. Therefore, the filing of the lawsuit does not toll the statute of limitations for potential class members until they file their own consents.

According to Plaintiffs, the claims of the putative opt-in plaintiffs should be tolled from the April 18, 2018, filing of their first conditional certification motion to the present, given the Court's prior vacating of the briefing schedule on their first motion, and the parties' subsequent agreement to strike it without prejudice in efforts to encourage their settlement negotiations. [*See* Pls.' Mot. at 12-14.] Emphasizing the broad remedial nature of the FLSA, Plaintiffs urge that courts routinely apply equitable tolling in FLSA cases, focusing on the fairness to all parties in weighing the issue. [*See id.*] As Plaintiffs reason, equitable tolling is especially appropriate here, where Defendants have had actual notice of the scope of their potential liability since the outset, and to avoid prejudice to potential opt-in plaintiffs whose claims might be extinguished without tolling of the limitations period. [*See id.* at 13-14.]

Defendants, on the other hand, assert that equitable tolling should not apply to Plaintiffs' claims, because Plaintiffs have failed to show that some extraordinary circumstance prevented potential claimants either from opting in or filing their own action(s) against Defendants in the years since Plaintiffs' initial motion. [*See* Defs.' Resp. at 12-15.] Moreover, Defendants argue, because all of their stores were closed by June 8, 2018, and Plaintiffs present no evidence to support application of the three-year limitation period for willful FLSA violations, no unexpired claims of any putative plaintiffs should remain. [*See id.* (citing dkt. 251-3, S. Khalil Dep.).] Although Defendants "acknowledge that fundamental fairness dictates that the statute should be tolled for a normal time for briefing and ruling" on Plaintiffs' conditional certification motion,

they argue that even with a tolling period of 60 days (from April 18, 2018 to June 18, 2018) to account for a briefing schedule and issuance of a decision (which they concede would be "unusually fast"), there still would presently be no unexpired claims—even with application of a three-year limitations period. [*Id.* at 13.] Defendants additionally argue (without any record citation) that because Sky Net Wireless IL, LLC, was closed in August 2017, and Moeen Khalil was "not an employer under the FLSA at all" but only named in this action as an investor in Sky Net Wireless IL, LLC, there were no unexpired claims against him after August 2020, even assuming application of a three-year limitations period. [Defs.' Suppl. at 1-2; Defs.' Resp. at 1-2, 14.]

As an initial matter, courts have held that a conclusory allegation of willfulness is sufficient to justify providing notice to the putative class on the basis of a potentially applicable three-year limitations period. *See, e.g.*, *Ivery*, 280 F. Supp. 3d at 1135 (collecting cases). This is so because the issue of willfulness goes directly to the merits, and "it is both unnecessary and unfair to require plaintiffs to prove the 'willfulness' of the defendants' alleged actions before permitting notice." *Id.* Given Plaintiffs' allegation of willful FLSA violations, [*see* Second. Am. Compl. ¶¶ 92, 103, 104, 153, 163, 164, 171, 181, 182], the Court therefore contemplates a three-year limitations period in considering Plaintiffs' request for equitable tolling.

Next, the statute of limitations in an FLSA action is not jurisdictional, and equitable tolling can be applied in appropriate circumstances. *See, e.g.*, *Bergman*, 949 F. Supp. 2d at 860. "[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 255 (2016) (internal quotation and alteration omitted); *accord*

*Knauf Insulation, Inc. v. Southern Brands, Inc.*, 820 F.3d 904, 908 (7th Cir. 2016). To satisfy the second prong, the circumstances causing the litigant's delay must be "both extraordinary *and* beyond its control." *Menominee Indian Tribe*, 577 U.S. at 255.

Some courts consider a delay in issuing a ruling on a conditional certification motion "an extraordinary circumstance that should not cause the opt-ins to lose out on the potential benefits" of a collective action lawsuit. *See Bergman*, 949 F. Supp. 2d at 860-61. Other courts disagree, however, reasoning that the passage of several months from motion to determination is a predictable and common result of busy dockets. *See, e.g., Sylvester v. Wintrust Fin. Corp.*, No. 12 C 01899, 2014 WL 10416989, at *2 (N.D. Ill. Sept. 26, 2014). Still other courts question the ability to assess the diligence of potential plaintiffs in advance of their opting into the case. *See Calloway v. AT & T Corp.*, 419 F. Supp. 3d 1031, 1037 (N.D. Ill. 2019) (denying plaintiffs' motion to equitably toll FLSA claims prior to conditional certification without prejudice to individual opt-in plaintiffs' subsequent renewal).

This Court need not weigh in on that debate here. In this case, there was a prior stay of discovery and conditional certification proceedings during the parties' protracted efforts over many months to settle their dispute on a class-wide basis, and the Plaintiffs' first conditional certification motion was correspondingly stricken without prejudice to renewal. [*See* dkt. 49, 92, 100.] Given this background, the Court cannot assess the diligence of putative plaintiffs, because "these circumstances have precluded their notice of the action." *See Lucas*, 321 F. Supp. 3d at 887.[10] As the court explained in *Lucas*, 321 F. Supp. 3d at 886-87, some courts consider the

---

[10] Defendants did not raise and accordingly have waived any prudential standing challenge to the named Plaintiffs' ability to seek tolling on behalf of putative plaintiffs. *See Alioto v. Town of Libson*, 651 F.3d 715, 721 (7th Cir. 2011) (party waives argument by failing to make it before the district court).

24

following factors in determining whether to toll the statute of limitations when unable to assess the diligence of the putative collective members: (1) whether the extraordinary circumstances were beyond the control of the plaintiff or the putative collective members; (2) whether refusal to toll the statute of limitations would result in hardship for the putative collective members; and (3) whether tolling prejudices the defendant. *See id*. This Court agrees with this reasoning, and considers each of those factors here.

As to the first and second factors, the record in this case demonstrates that Plaintiffs could not pursue their initial certification motion given the stay while the parties focused their efforts on settlement. [*See* dkt. 92.] As a result, putative opt-in plaintiffs did not receive notice of the action, and these circumstances were beyond their control. *See Lucas*, 321 F. Supp. 3d at 887; *Yahraes v. Rest. Assocs. Events Corp*., No. 10-CV-935 SLT, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011) (granting equitable tolling of FLSA claims based on extraordinary circumstances of procedural history of case, including a court-imposed stay). By striking the briefing schedule, imposing a stay, and then striking the motion by agreement, "without prejudice to refiling . . . if the parties do not reach a settlement," it is also clear that all parties and the Court contemplated maintaining a status quo while they endeavored to resolve the lawsuit on a collective/class basis. [*See, e.g.,* dkt. 49, 92, 100.] This is no small factor here, because it is well-settled that "[t]he law generally favors and encourages settlements." *Nat'l Cas. Co. v. White Mountains Reins. Co. of Am.*, 735 F.3d 549, 556 (7th Cir. 2013) (quoting *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1013 (7th Cir. 1980)). Denying Plaintiffs' request for tolling would not only result in hardship to the putative plaintiffs who would lose significant time to bring their claims as a result of the delay incurred during the stay and the parties' extensive efforts to settle, but it would also undermine the encouragement of settlements and the intent of the parties at the

time they endeavored to resolve their dispute. As to the third factor, tolling the statute of limitations does not unfairly prejudice Defendants, who have known the potential scope of their liability since service of Plaintiffs' complaint. *See Lucas*, 321 F. Supp. 3d at 888. For these reasons, application of equitable tolling is appropriate here.

Plaintiffs' request to toll from the filing of their first conditional certification motion to the present, however, is once again too broad. Beyond the period that discovery and conditional certification was stayed and the parties focused on efforts to settle, Plaintiffs present no evidence or argument to suggest that they were prevented from filing for conditional certification or that putative collective members were prevented from opting in or initiating their own action. To apply equitable tolling in a blanket fashion under these circumstances would transform this remedy into "a routine, automatic one." *See Soto*, 2016 WL 4701444, at *10.

Accordingly, the Court concludes that tolling of the limitations period is appropriate from the filing of Plaintiffs' first conditional certification motion, April 18, 2018, [dkt. 15], until the termination of settlement proceedings on December 12, 2019, [dkt. 122], for a total of 603 days. Additionally, given Defendants' agreement that some period of tolling during the pendency of the current conditional certification motion is appropriate, and the fact that the briefing schedule on the current motion was extended three times upon Defendants' request, resulting in a total extension of 90 days, *i.e.*, from May 12, 2021, to August 10, 2021 [*see* dkt. 198, 208, 230], tolling for an additional 90 days is appropriate, for a total tolling of the three-year limitations period of 693 days. Plaintiffs' motion to equitably toll the limitations period is thus granted in part and denied in part.

Accordingly, even if Defendants no longer employed anyone as of June 8, 2018, as they claim, it is not the case that no unexpired claims of putative plaintiffs could remain (because by

this Court's calculation, tolling the three-year limitations period by 693 days means that claims arising as of June 8, 2018, may not expire until around May 1, 2023). The tolling period must be taken into consideration in Plaintiffs' revised collective definitions, and the Court thus turns to Plaintiffs' proposed form of notice.

### *Plaintiffs' Proposed Form of Notice*

Having found that conditional certification is appropriate, and that unexpired claims of putative plaintiffs may remain, the Court therefore concludes that notice of the action should issue to people who worked at the same MetroPCS franchise location(s) as any of the named Plaintiffs. Neither Plaintiffs nor Defendants identified those particular store(s) for the Court. Accordingly, Plaintiffs must revise their proposed Notice and Consent with these narrowed collectives in mind. Plaintiffs must also include a proposed time period in the definition of their collectives, consistent with this Court's equitable tolling analysis. Further, Plaintiffs' amended proposed notice must remove characterization of the case as in its "early" pretrial stage, and must either remove reference to Ghaben and Hamad Brothers as Defendants, or note that they have been dismissed without prejudice. [*See* dkt. 218.] As to these issues and Defendants' additional objections to the notice [*see* Defs.' Resp. at 15], Plaintiffs are directed to meet and confer with Defendants and file an agreed motion by 4/6/22 for approval of an amended proposed Notice and Consent, or setting out in no more than two pages the parties' respective positions as to the form.

Finally, to assist in the distribution of notice, Plaintiffs additionally request an order instructing Defendants to produce within seven days the names, last known addresses and email addresses of prospective opt-in plaintiffs in Microsoft Excel format. [Pls.' Mot. at 2-3, 15.] They also request the visible posting of a copy of the court-approved notice in Defendants' business premises in Illinois, an order precluding Defendants from securing any releases or waivers from

their employees of their FLSA claims, and an order compelling Defendants to "enclose the court-approved notice in pay envelopes in English and in Spanish to all of Defendants' current employees." [Pls.' Mot. at 11-12.] Defendants do not respond to these requests, and have accordingly waived any objection to them, which are granted in part as unopposed.[11] *See Alioto*, 651 F.3d at 721. Accordingly, within seven days of this Court's approval of an amended proposed Notice and Consent, Defendants shall produce the names, last known addresses and email addresses of prospective opt-in plaintiffs *in whatever format such information is stored and may be made accessible to Plaintiffs,* so that Plaintiffs may issue notice and one subsequent reminder by U.S. postal mail and email (in English and Spanish). In the event that Defendants still operate any of the operative store(s) within the scope of the collectives and have employees there, Defendants shall post the Court-approved Notice within seven days of its approval and include the notice in potential opt-in plaintiffs' next pay envelopes (in both English and Spanish versions, if provided by Plaintiffs).

## CONCLUSION

For each of the foregoing reasons, Plaintiffs' renewed motion for conditional certification and issuance of notice pursuant to U.S.C. § 216(b), [dkt. 194], is granted in part and denied in part, consistent with this opinion. An agreed motion is due by 4/6/22 for approval of an amended proposed Notice and Consent, or setting out in no more than two pages the parties' respective positions as to the form. The parties also are directed to meet and confer on a proposed collective discovery schedule, by 4/13/22. A Joint Status Report setting out their agreed proposed schedule,

---

[11] Perhaps this is because, according to Defendants, they no longer operate MetroPCS franchise locations in Chicagoland, and thus have no employees there. Perhaps these issues are even undisputed. In any case, it is not clear from the parties' filings, and the Court makes no determination on such factual matters at this point.

or stating the parties' respective *positions* on it (rather than argument), is due by 4/20/22.  All other previously ordered dates to stand.

**SO ORDERED.**

**Dated:  3/23/22**

BETH W. JANTZ
United States Magistrate Judge