**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| DATISHA HUNTER, et al.,<br><br>Plaintiff,<br><br>v.<br><br>WIRELESSPCS CHICAGO LLC, et al.<br>Defendants. | Case No. 18-cv-0980<br><br>Magistrate Judge Beth W. Jantz |

## ORDER

For the reasons discussed more fully below: 1) Plaintiffs' Motion for Summary Judgment [377] is denied; 2) Defendants' Motion for Summary Judgment [382] is granted as to Counts XIII, XV, XVII, XIX, XX, XXI, XXII, and XXIII, and denied as to the remaining retaliation claims; and 3) Defendants Moeen Hasan Khalil and Saed Khalil's Motion for Summary Judgment [385] is denied as to the issue of "employer" liability, and granted as to piercing the corporate veil. A status hearing is set for 4/29/25 at 11:30am, to discuss any interest in settlement (which the parties should discuss between themselves ahead of time), the setting of a trial date, and pretrial procedures.

## BACKGROUND

Plaintiffs Datisha Hunter, Latricia Hunter, and Wilfredo Rivera (collectively, "Plaintiffs") filed this putative class and collective action against Defendants WirelessPCS Chicago LLC, Sky Net Wireless IL, LLC, Moeen Hasan Khalil, and Saed Khalil (collectively, "Defendants") for claimed violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS § 105/1 *et seq.* ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 *et seq.* ("IWPCA"), the Cook County Minimum Wage Ordinance, the Chicago Minimum Wage Ordinance, the Illinois Whistleblower Act, and common law Illinois retaliatory

discharge. (Dkt. 298.) Plaintiffs were each employed as salesclerks at various Chicagoland MetroPCS franchise locations owned and operated by Defendants, where they sold cellular phone products and services. (Dkt. 302 at ¶ 46.)

The parties filed three separate motions for summary judgment on a variety of issues. First, Plaintiffs' motion for summary judgment asks the Court to enter judgment in favor of Plaintiffs on Count VI of the Third Amended Complaint, which concerns unlawful deductions from Plaintiffs' wages in violation of the IWPCA. (Dkt. 377.) Second, all Defendants filed a motion for summary judgment seeking the Court to enter judgment in their favor on the claims brought by Plaintiffs Latricia Hunter and Datisha Hunter for retaliation.[1] (Dkt. 382.) Third, Defendants Moeen Hasan Khalil ("Moeen") and Saed Khalil ("Saed") bring a motion for summary judgment requesting a finding that they are not "employers" under the FLSA, IMWL, or IWPCA, and also that there are no genuine issues of material fact that would support Plaintiffs' request to pierce the corporate veil. (Dkt. 385.) As these motions each cover distinct legal issues, the Court discusses the relevant facts for each motion in turn below.

## I. Plaintiffs' Motion

Count VI of the Third Amended Complaint claims that Defendants took unlawful deductions from Plaintiffs' wages in violation of the IWPCA. (Dkt. 298 at ¶¶ 148-151.) According to Plaintiffs' brief, these deductions were for "store shortages, missing inventory, repaying advances, personal loan payments, and other reasons." (Dkt. 379 at 2.) Although it is difficult to parse the

[1] The retaliation claims in the Third Amended Complaint are brought pursuant to the FLSA (Counts XII and XIII), IWPCA (Counts XIV and XV), Cook County Minimum Wage Ordinance (Count XVI and XVII), Chicago Minimum Wage Ordinance (Counts XVIII and XIX), the Illinois Whistleblower Act (Counts XX and XXI), and common law retaliatory discharge (XXII and XXIII). Even-numbered claims belong to Latricia Hunter, and odd-numbered are brought by Datisha Hunter.

precise nature of Plaintiffs' unlawful deduction claim, they point to several violations related to the deductions: 1) deductions made without "the express written consent of the employee, given freely at the time the deduction was made," in violation of 820 ILCS 115/9(4); 2) "no deduction can take place if the deduction would allow an employee's actual received wages to be less than the minimum wage for all hours worked, and that employees receive a wage of not less than one and one-half times their regular rate for all hours of overtime worked," in violation of 820 ILCS 105/4; and 3) no "cash advance repayment agreement shall provide for a repayment schedule of more than 15% of an employee's gross wages or final compensation per paycheck," pursuant to 56 Ill. Admin. Code §300.800. (Dkt. 379 at 5-7.)

Plaintiffs' brief discusses several employees who are not named Plaintiffs. (Dkt. 379 at 1-4.) However, the Court has denied Plaintiffs' motion to certify a class on the wage deduction claims. (Dkt. 410). Because Count VI is an IWPCA claim, it would be an opt-***out*** class under Rule 23, not an opt-***in*** class such as on the FLSA claims. *McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574, 576 (N.D. Ill. 2004) ("Class certification under Rule 23 creates an opt-out class requiring parties to file a consent if they do not want to join the action", whereas "the FLSA establishes an opt-in system for collective actions"). Thus, the only relevant claims for this Count are those of the named Plaintiffs,[2] and the Court therefore will focus its attention on the facts that apply to those individuals – Wilfredo Rivera, Datisha Hunter, and Latricia Hunter.

According to Plaintiffs, Wilfredo Rivera had a total of $1,327.00 deducted from his wages during his time working for the Defendants. (Dkt. 378 at ¶ 30.) There were 20 authorizations signed, leaving $35.53 in deductions with no authorization. (*Id.* at ¶¶ 30-31.) Plaintiffs raise

[2] The other named Plaintiff, Latrice Wilson, was dismissed from the action with prejudice earlier in the litigation. [Dkt. 370.]

several additional concerns with the deductions: Plaintiffs contend that six deductions were for more than 15% of Mr. Rivera's gross pay; six were authorized after the deductions were taken (*i.e.*, not at the time the deduction was made pursuant to 820 ILCS 115/9(4)); three were for more than the purported authorization; Mr. Rivera disputes signing some of the authorizations; and some deductions resulted in Mr. Rivera receiving less than the prevailing minimum wage. (*Id.* at ¶ 31.) For the most part, Plaintiffs do not point to which deductions fall into which of these categories, but they do provide two examples. First, there was a February 27, 2017 authorization for $10 per paycheck over 5 installments; however, the pay periods for that deduction were from February 10 through March 10, and, therefore, Plaintiffs believe the authorization postdates the deductions. (*Id.*) Next, "for the pay period ending May 21, 2017, Defendants deducted $67.00 from his gross pay of $259.52 resulting in gross pay of $192.52 for 25.43 hours of work resulting in (sic) hourly rate of $7.57," which is less than the minimum wage. (*Id.*)

Defendants dispute virtually all of this. In particular, Defendants note that "[t]he deduction cited for December 1, 2016 states that Wilfredo Rivera would pay $15 until the shortage of $48.29 was repaid in full, and there was a corresponding deduction for $46 even, which is very close to the amount listed on the December 1, 2016 deduction authorization, and would account for basically the difference Plaintiffs cite to as the alleged shortfall, and would account for more than what Plaintiffs are alleging was deducted without authorization." (Dkt. 399 at ¶ 30.) In other words, Defendants contend, this error would account for nearly all of the $35.53 in deductions with no authorization. Defendants also note that the documentation supporting the February 27, 2017 deduction only shows "when the document was 'approved by' apparently a supervisor that appears to say 'Mohammad,'" but "does not provide the date Wilfredo Rivera signed the form." (*Id.* at ¶ 31.) Defendants claim there is a question of fact of when Mr. Rivera authorized the

deduction. Furthermore, Defendants correctly state that "Plaintiffs cite generally to payroll records without identifying which deductions were allegedly over 15% of gross pay or were for more than the purported authorization." (*Id.*) Finally, "Wilfredo Rivera states outright that he has questions of material fact as to whether he signed 'several authorizations.'" *Id.*

For Plaintiff Datisha Hunter ("Datisha"), Plaintiffs claim that she had $2,672.93 deducted from her wages, of which only $2,056.42 have deduction authorizations (leaving $616.51 with no authorization). (Dkt. 378 at ¶¶ 33-35.) Plaintiffs claim that seven deductions have no authorization, three were signed after deductions were taken, 21 were for more than 15% of her gross pay, and "others result in Ms. Datisha Hunter being paid less than minimum wage." (*Id.* at ¶ 35.)

Again, Defendants dispute this. In particular, Plaintiffs note that Datisha testified that she had her wages garnished by a third party while she was employed by Defendants. (Dkt. 378-29 at 226:4-7.) Unfortunately, Datisha's deposition testimony did not establish the type of garnishment or the amount, and her attorney instructed her not to answer further questions about the details of the garnishment. (*Id*. at 226:15-229:9.) Also, Defendants dispute the claims "to the extent Plaintiffs also do not distinguish between deductions that are advances or loans and those that were for shortages." (Dkt 399 at ¶ 35.)

Finally, for Plaintiff Latricia Hunter ("Latricia"), Plaintiffs allege that $50 was once deducted from her wages, but that the money was refunded when Latricia complained. (Dkt. 378 at ¶ 37.) Defendants respond that it is "[u]ndisputed that Latricia Hunter did not have any wages deducted by Defendants." (Dkt. 399 at ¶ 37.) Plaintiffs' brief in support does not discuss Latricia's purported deductions at all. (Dkt. 379.) Plaintiffs' reply brief only asserts that, "Ms. Hunter did have an unlawful deduction taken in the amount of $50.00. (PSOF at 37), There was no

authorization from Latricia Hunter. *Id*. Latricia Hunter complained and managed to get her money returned, but that does not mean that Defendants did not illegally take her money in the first instance," but cites no case law regarding that issue. (Dkt. 401 at 8.)

## II. Motion by All Defendants

Latricia worked from February 2017 until August 2017 in Defendants' stores. (Dkt. 396 at ¶ 5.) At the time she stopped working as a salesperson for the MetroPCS franchises, the parties dispute who owned the relevant business. Defendants maintain that in August 2017, non-party Hamad Brothers Inc. owned the relevant business, and, therefore, any adverse employment decision was made by Hamad Brothers Inc. and not Defendants. (*Id.*) Plaintiffs rightly point out, however, that Defendants elsewhere admitted that "WirelessPCS and/or Sky Net operated eleven retail cell-phone stores during the period between February 1, 2015 until May 2018 throughout Chicago, Illinois and with one store in Bridgeview, Illinois." (Dkt. 396 at ¶ 12.) Latricia testified at her deposition that she made several complaints about her paycheck being incorrect. (Dkt. 397-4 at 103:9-15.) She further stated that she complained regularly about her wages and described her employers as "a little rattled" about the complaints. (*Id*. at 118:21-119:5.) Latricia claimed that as she continued to complain about her wages being incorrect, her supervisors "that were over me that had authority over me, they were acting different" and were not "as talkative or as friendly" and acted "very standoffish." (*Id.* at 136:24-137:4.) In August 2017, she was informed by Mohammed Ghaben that the stores were making changes to the schedule and that he would let Latricia know when the new schedule came out. (*Id.* at 133:19-23.)[3] Although she was never told directly and expressly that she was terminated, Latricia was never put back on the schedule and

[3] Mr. Ghaben (also known as "Mo G.") was the Area Manager for Defendants' Chicagoland stores in August 2017. (Dkt. 397-4 at 20:23; Dkt. 393-3 at ¶ 2.)

was told to return her keys to the store; she applied for and received unemployment benefits after her cessation of employment with Defendants. (*Id.* at 134:2-136:8.)

Datisha worked for Defendants between November 2016 and June 2018. (Dkt. 397 at ¶ 1.) Datisha states that she made "multiple complaints about wage violations while employed by Defendants," including to Mr. Ghaben in a group chat. (*Id.* at ¶¶ 7-8.) Defendants state that they sold the stores where Datisha worked on June 8, 2018. (Dkt. 396 at ¶ 8.) Defendants state that they never terminated Datisha's employment, but that the new owners chose not to continue her employment after the sale of the stores. (*Id.* at ¶ 37.) Datisha's testimony contradicts that version of events; she testified that she "was fired by Florida" (where Defendants' corporate headquarters was located), who "gave the orders" to fire her. (Dkt. 397-5 at 139:20-24.) It is Plaintiffs' position that this firing occurred before the stores were sold to the new owners. (Dkt. 395 at 10.) When asked at her deposition what knowledge she had that supported her contention that she was fired due to her wage complaints, Datisha either refused to answer the questions on the basis of attorney-client privilege or stated "[t]hey are all under WirelessPCS." (Dkt. 397-5 at 146:18-152:5.) Datisha also asserts that she "was fired by Defendants because she filed (sic) instant lawsuit." (Dkt. 397 at ¶ 11.) The instant lawsuit was filed before she ended working for Defendants, on February 7, 2018.

## III. Khalil Defendants' Motion

Defendants Moeen Hasan Khalil and Saed Khalil (the "Khalil Defendants") bring their motion for summary judgment seeking a ruling that they are not "employers" as defined in the FLSA, IMWL, or IWPCA, and that Plaintiffs may not pierce the corporate veil. (Dkt. 387.) The Khalil Defendants posit that they were simply passive investors in the corporations that ran the relevant MetroPCS stores, and they delegated all management, payroll, human resources, and

administration to other people and entities. (Dkt. 386 at ¶¶ 26-28, 37-40.) Given the procedural posture of this case, the Court will not belabor all the ways in which the Khalil Defendants disclaim knowledge or control of the relevant franchise locations; instead, the relevant issue is whether issues of fact exist regarding the Khalil Defendants' involvement in the stores' business.[4] Moeen testified that he had authority to hire, fire, set hourly wages, and set commissions for employees of Skynet Wireless IL, LLC and Wireless PCS Chicago, LLC. (Dkt. 394-1 at 157:1-158:5.) One email shows Moeen (going as "Mike Khalil") offering to hire Mohammed Ghaben as the Area Manager for the Chicagoland stores. (Dkt. 394-4.) There is evidence in the record suggesting that Moeen was the administrator of the "Chicago All Star" group chat involving store employees and added members to the group. (Dkt. 394 at ¶ 4.)

Saed was the sole member of WirelessPCS Chicago LLC and the managing member. (Dkt. 394 at ¶ 6.) He testified that he was not involved in the day-to-day operations of the business or managing employees. (Dkt. 393 at ¶ 37.) Saed had authority to transfer money to ensure that WirelessPCS Chicago, LLC and SkyNet Wireless IL, LLC had sufficient capital to operate. (Dkt. 394-2 at 73:21-74:22.) Although Saed did not handle payroll directly, he delegated authority over payroll, handbooks, and company policies to Fatin Ittayem. (Dkt. 394-7 at 50:20-51:2, 68:17-69:4.) On a quarterly basis, Saed Khalil testified that he would review the profit and loss statements with his bookkeeper, Norbey Trujillo, and review expenses, including payroll. (Dkt. 397-3 at 77:20-79:5.) Saed Khalil also had authority to be a signatory on the bank accounts of the corporate entities. (Dkt. 394-7 at 53:2-13.)

[4] The Court understands that Defendants deny most of these factual assertions, but upon summary judgment review, the evidence must be viewed in the light most favorable to Plaintiffs, as the non-moving party. *Foley v. City of Lafayette Indiana*, 359 F.3d 925, 928 (7th Cir. 2004).

## LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette Indiana*, 359 F.3d 925, 928 (7th Cir. 2004). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *See Cellotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Cellotex,* 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the (non-movant's) position will be insufficient; there must be evidence on which the jury could reasonably find for the (non-movant)." *Anderson,* 477 U.S. at 252.

## DISCUSSION

### I. Plaintiffs' Motion

There are genuine issues of material fact that preclude summary judgment on Plaintiffs' IWPCA unlawful deductions claims in the Third Amended Complaint. As drafted, Count VI is for unlawful deductions in violation of 820 ILCS 115/9, which prohibits "deductions by employers from wages or final compensation," unless certain conditions are met. *Osorio v. The Tile Shop,*

*LLC*, 939 F.3d 847, 850 (7th Cir. 2019). One of these conditions is if the deduction is "made with the express written consent of the employee, given freely at the time the deduction is made." 820 ILCS 115/9(4). Another is if the deduction is "required by law" or "in response to a valid wage assignment or wage deduction order." 820 ILCS 115/9(1), (3). The IWPCA's implementing regulations also provide that "[n]o cash advance repayment agreement shall provide for a repayment schedule of more than 15% of an employee's gross wages or final compensation per paycheck." Ill. Admin. Code tit. 56, §300.800 (2018).

**A. Wilfredo Rivera**

For Mr. Rivera, there are several issues of fact that defeat Plaintiffs' motion. As an initial matter, to the extent that Mr. Rivera's motion contends that some deductions resulted in Mr. Rivera receiving less than the prevailing minimum wage, those arguments are misplaced. (*See* Dkt. 378 at ¶31.) The issue of minimum wage is not covered by 820 ILCS 115/9 (which is the basis for Count VI), and instead an issue for the IMWL or FLSA, which are covered by other claims in Plaintiffs' Third Amended Complaint.

Next, to the extent that Plaintiffs' motion is based on the allegation that some deductions were for more than 15% of Mr. Rivera's gross pay, the motion is denied. As cited above, the relevant regulation cited by Plaintiffs states that "[n]o cash advance repayment agreement shall provide for a repayment schedule of more than 15% of an employee's gross wages or final compensation per paycheck." Ill. Admin. Code tit. 56, §300.800 (2018). As far as the Court can tell, Plaintiffs have not attempted to demonstrate that any of these allegedly improper deductions from Mr. Rivera's paycheck were for cash advances; thus, there is a genuine issue of material fact whether that section of the Illinois Administrative Code even applies to the deductions at issue here that Plaintiff represents were over 15% of Mr. Rivera's gross wages.

As for the remaining claims, Defendants have raised genuine issues of fact: they have pointed to evidence that suggests that some or all of Mr. Rivera's alleged deductions have written authorizations, cast doubt on whether the authorizations came after the alleged deductions, or accurately noted that Mr. Rivera's contention that he did not sign some of the authorization is itself a clear issue of fact. (Dkt, 399 at ¶¶ 30-31.)

Based on the factual record in front of the Court, there are genuine issues of material fact regarding whether Defendants took deductions from Mr. Rivera's wages that violate the IWPCA. Therefore, the Court denies the motion as to Mr. Rivera on Count VI.

**B. Datisha Hunter**

The same issues generally apply to Datisha's arguments that the deductions took her wages below minimum wage or constituted more than 15% of her gross pay. While Defendants admit that they did give Datisha some cash advances, the Court agrees that, for example, "Plaintiffs also do not distinguish between deductions that are advances or loans and those that were for shortages." (Dkt. 399 at ¶¶33, 35.) The Court cannot determine based on the record that the Plaintiffs have presented whether deductions that constituted more than 15% of Datisha's gross wages were for cash advances, thereby implicating the relevant section of the Illinois Administrative Code, Ill. Admin. Code tit. 56, §300.800.

As for the remaining deductions, there is a more basic issue. As noted above, Datisha testified that she had her wages garnished by a third party while she was employed by Defendants, (dkt. 378-29 at 226:4-7), and her deposition testimony did not establish the type of garnishment or the amount, (*id*. at 226:15-229:9.) The IWPCA ***allows*** deductions "required by law" ***or*** "in response to a valid wage assignment or wage deduction order," 820 ILCS 115/9(1), (3) (emphasis added), meaning that any deduction that meets one of those enumerated criteria is lawful. In other words,

"deductions by employers from wages or final compensation are prohibited ***unless*** such deductions are . . . in response to a valid wage assignment or deduction order." 820 ILCS 115/9(3) (emphasis added). Therefore, such a deduction would be legal, even if the employee did not give a contemporaneous authorization (although giving such contemporaneous written authorization is yet another way that a deduction may be permitted under the IWCPA, 820 ILCS 115/9 (4) ("made with the express written consent of the employee, given freely at the time the deduction is made"). It is unclear from the record presented to the Court which of Datisha's deductions may have been attributed to garnishment by a third party (which would not require a contemporaneous written authorization) and which were not. As such, there are genuine issues of material fact regarding whether the allegedly offending deductions were permissible wage garnishments or impermissible deductions given without contemporaneous authorization. The motion is denied as to Datisha Hunter as to Count VI.

**C. Latricia Hunter**

Regarding Latricia, Defendants' response is confusingly worded. Plaintiffs assert that Defendants deducted (and then refunded) $50 from Latricia's wages, (Dkt. 378 at ¶ 37); however, Defendants state that it is "[u]ndisputed that Latricia Hunter did not have any wages deducted by Defendants." (Dkt. 399 at ¶ 37.) The Court takes this to mean that Defendants dispute whether any deductions were taken from Latricia. The email cited by Plaintiffs suggests that Defendants accidentally deducted $50 from Latricia's paycheck that should have been attributed to Datisha, and then refunded the amount when the issue was raised by Latricia. (Dkt. 378-33.) The Court is uncertain whether erroneous deductions that are later refunded violate the IWPCA, but Plaintiffs have not developed that argument in any way or cited any case law supporting that position. Therefore, the Court deems this argument waived and denies summary judgment as to Latricia.

*See Shipley v. Chi. Bd. of Election Commissioners*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived").

* * * * * *

Because there are genuine issues of material fact regarding Count VI with respect to each of the named Plaintiffs in this case, Plaintiffs' motion for summary judgment is denied.

**II. All Defendants' Motion**

Defendants' motion for summary judgment regarding the retaliation claims is granted in part and denied in part as to Latricia's claims, and granted as to Datisha's claims. The retaliation claims in the Third Amended Complaint are brought pursuant to the FLSA (Counts XII and XIII), IWPCA (Counts XIV and XV), Cook County Minimum Wage Ordinance (Count XVI and XVII), Chicago Minimum Wage Ordinance (Counts XVIII and XIX), the Illinois Whistleblower Act (Counts XX and XXI), and common law retaliatory discharge (XXII and XXIII). To make a claim for FLSA retaliation, "Plaintiffs must show: (1) that they engaged in protected conduct; (2) that they suffered an adverse employment action; and (3) that a causal link existed between their protected conduct and the adverse action." *Jenkins v. White Castle Mgmt. Co.*, No. 12-CV-7273, 2016 WL 5476234, at *6 (N.D. Ill. Sept. 29, 2016). As discussed below, although there is some variation in each of the retaliation claims, they all require a causal link between the protected conduct and the adverse employment action.[5] Regardless of whether the plaintiff uses "direct" or "indirect" evidence, the

---

[5] "To state a viable retaliation claim under the FLSA and the IWPCA, a plaintiff must allege that 'he engaged in activity protected under the Act, that his employer took an adverse employment action against him, and a causal link exists between the two.'" *Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, No. 1:20-CV-00314, 2021 WL 1212796, at *8 (N.D. Ill. Mar. 31, 2021) (citing *Sloan v. American Brian Tumor Assoc.*, 901 F.3d 891, 894 (7th Cir. 2018)). *See* Principe v. Vill. of Melrose Park, No. 20 CV 1545, 2022 WL 488937, at *13 n.32 (N.D. Ill. Feb. 17, 2022) (Illinois Whistleblower Act retaliation claim requires a showing that retaliatory motive caused the discharge). To prove a claim for Illinois common law retaliatory discharge, "a plaintiff must show a causal connection between his discharge and his protected activities." *Hirmiz v. Travelodge*

Court must analyze "whether the evidence would permit a reasonable factfinder to conclude" that the protected activity caused the adverse employment action. *Turner v. DeJoy*, No. 21-CV-4689, 2024 WL 1486730, at *8 (N.D. Ill. Apr. 5, 2024) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)). To demonstrate causation, Plaintiffs may "rely on evidence of suspicious or ambiguously retaliatory statements, suspicious timing, or an admission of culpability. But suspicious timing alone will rarely be sufficient in and of itself to create a triable issue." *Jenkins*, 2016 WL 5476234 at *6 ("It is well established that suspicious timing, without more, is generally insufficient to support a reasonable inference of retaliation.")

**A. Datisha's Claims**

For Datisha, it does not appear that Defendants challenge that she engaged in protected activity under the relevant statutes. Although they challenge whether she was terminated by Defendants or whether the new store owners simply chose not to hire Datisha, there is evidence in the record on which a jury could find that Datisha was fired by Defendants prior to the sale of the stores. Datisha testified at her deposition that she was fired "by Florida" (*i.e.*, Defendants' corporate headquarters). (Dkt. 397-5 at 139:20-24.) This is sufficient evidence for a reasonable juror to conclude that she was subjected to an adverse employment action.

---

*Hotel Corp.*, No. 15 C 6874, 2016 WL 5391180, at *4 (N.D. Ill. Sept. 27, 2016), *aff'd sub nom. Hirmiz v. New Harrison Hotel Corp.*, 865 F.3d 475 (7th Cir. 2017) (citing *Michael v. Precision Alliance Grp., LLC,* 21 N.E.3d 1183, 1188 (Ill. 2014)). Neither party cited any cases analyzing the anti-retaliation statutes of the Cook County Minimum Wage Ordinance or the Chicago Minimum Wage Ordinance. Because the statutory language of those ordinances tracks that of the FLSA and other similar statutes (which all require causality between the adverse employment action and the protected activity), the Court also treats those ordinances as requiring the same sort of causation. *Compare*, 29 U.S.C. §215(a)(3), *with* Cook County Ordinance 42-20, Chicago Municipal Code §6-105-080.

However, there is no genuine issue of material fact on which a reasonable juror can find that Datisha's firing was caused by her protected activity. In Plaintiffs' brief in opposition to Defendants' motion, they argue that, "[b]ased on her testimony and the timing of her complaints in relation to her termination, it is reasonable to infer she was fired as a result of her complaints." (Dkt. 395 at 9.)[6] However, as discussed above, suspicious timing alone will rarely be sufficient in and of itself to create a triable issue. *Jenkins*, 2016 WL 5476234 at *6. That is true here. The instant lawsuit was filed in February 2018, (Dkt. 1), but even under Datisha's version of events, she worked for Defendants until June 2018. (Dkt. 397 at ¶ 1.) In other words, Defendants allowed her to continue working for them for approximately four months after she filed a federal lawsuit against them before, according to Plaintiff, allegedly firing her in retaliation for her protected activity. (Dkt. 1; Dkt. 397 at ¶ 10.) A similar time gap has been rejected by the Seventh Circuit. *See Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir. 2001) ("[T]he length of time between the

[6] It is unclear what other evidence Plaintiff is necessarily referring to here. Plaintiffs' brief states that "Datisha Hunter testified that she had conversations with and received voice messages from other employees who informed her she had been fired because of her complaints of wage violations." (Dkt. 395 at 9.) However, the portions of the statement of material facts cited by Plaintiffs do not fully support this contention. The Court's review of Datisha's deposition testimony revealed that she testified that she "had conversations, and [she] had a few voice messages, had conversations with other employees" who told she had been fired because of her complaints, but she could not remember their names and did not know where they got their information. (Dkt. 378-29 at 157:15-158:16.) This type of vague deposition testimony is not enough to overcome summary judgment. *See Reid v. Wal-Mart Stores, Inc.*, 274 F. Supp.3d 817, 827 (N.D. Ill. 2017) (granting summary judgment in favor of defendant where plaintiff had "not provided anything beyond her own vague testimony to support her allegation that Wal–Mart promoted a male employee over her"); *see also Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1260 (7th Cir. 2025) (affirming summary judgment in favor of defendant because plaintiff's evidence in support of FLSA overtime claim was too vague). Moreover, even if the Court believed this testimony was sufficient to overcome summary judgment, it may be inadmissible hearsay. *See, e.g., Reid*, 274 F. Supp. 3d at 827 (denying summary judgment because plaintiff's "only evidence is her own testimony that she overheard other employees say that a male was promoted to support manager," and "[t]hat testimony, however, would be inadmissible hearsay"). "A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment." *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).

protected speech and the adverse employment action is at least four months, which, without more, is too long to support a reasonable inference of causation").

Thus, even taking the facts in the light most favorable to Datisha, there is no genuine issue of material fact regarding causation; the record before the Court demonstrates only "suspicious timing" based on a several months-long gap between the protected activity and termination, which is insufficient to demonstrate causation as a matter of law. Therefore, the Court grants Defendants' motion as to all of Datisha's retaliation claims.[7]

**B. Latricia's Claims**

As to Latricia, there is again no dispute that she engaged in protected activity. As to an adverse employment action, although Defendants claim in their brief and accompanying materials that Latricia was never explicitly told that she was terminated by Defendants, they do not present sufficient evidence suggesting that Latricia was not terminated or subjected to an adverse employment action. (*See* Dkt. 384 at 5, 8.) Finally, while Defendants claim that Hamad Brothers Inc. was in charge of the franchise locations when Latricia was terminated, (dkt. 396 at ¶ 5), there is a genuine issue of fact as to whether Defendants' ownership of the stores was continuous, given Defendants' earlier admission that "WirelessPCS and/or Sky Net operated eleven retail cell-phone stores during the period between February 1, 2015 until May 2018 throughout Chicago, Illinois and with one store in Bridgeview, Illinois." (Dkt. 396 at ¶ 12.)

Defendants also contend that Latricia cannot demonstrate causation on the record before the Court. Unlike Datisha, Latricia's evidence on this point, however, does not rely solely on

[7] Counts XIII, XV, XVII, XIX, XXI and XXIII. And even if there was evidence in the record to demonstrate causation, the Court would also grant summary judgment on Datisha's Illinois Whistleblower and common law retaliatory discharge claims (Counts XXI and XXIII) for the reasons discussed below in the section discussing Latricia's claims.

suspicious timing; Latricia testified that her employers were "a little rattled" by her complaints, and that as she continued to complain about her wages being incorrect, her supervisors "that were over me that had authority over me, they were acting different" and were not "as talkative or as friendly" and acted "very standoffish." (*Id.* at 136:24-137:4.) Actions such as "ambiguous behaviors" can support a finding of causation. *Barker v. Quick Test, Inc.*, No. 13 C 4369, 2016 WL 1019708, at *13 (N.D. Ill. Mar. 15, 2016); *see, e.g., Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 974 (7th Cir. 2012) (finding that ambiguous statements before termination presented genuine issue of material fact sufficient to defeat employer's motion for summary judgment on FLSA retaliation claim). A reasonable juror could rely on the change in behavior of Latricia's supervisors due to her continued wage complaints to infer that Latricia's termination was caused by retaliatory motive on the part of Defendants. As such, the Court believes that Latricia has submitted sufficient evidence that would permit a reasonable factfinder to conclude that her protected activity caused her termination, and the Court will deny Defendants' motion for summary judgment on this basis.

However, the Court notes that one of Latricia's retaliation claims – for Illinois common law retaliatory discharge (Count XXII) – requires an additional element that her other retaliation claims do not. "A claim for retaliatory discharge under Illinois common law 'requires a showing that an employee has been (1) discharged; (2) in retaliation for the employee's activities; *and (3) that the discharge violates a clear mandate of public policy*.'" *Wilke v. Salamone*, 404 F. Supp. 2d 1040, 1049 (N.D. Ill. 2005) (emphasis added) (quoting *Hartlein v. Illinois Power Co.,* 151 Ill.2d 142, 160, 176 Ill.Dec. 22, 601 N.E.2d 720, 728 (1992)). "Illinois courts have repeatedly limited the reach of the retaliatory discharge claim." *Id.* Both the IMWL and IWPCA have been held insufficient to make out a claim that alleged retaliation violates a clear mandate of public policy.

*Id.* Beyond pointing out in conclusory fashion that, "Illinois courts have held that by promulgating the Wage Payment and Collection Act, the 'legislature clearly indicated that it is the public policy of the State to ensure the proper payment of wages to employees by employers'" (dkt. 395 at 6-7), and that "it is a violation of public policy to fire someone because of complaints of wage violations," (id. at 8), Latricia develops no argument or evidence that Defendants' alleged retaliation in this particular case violated public policy. The Court finds that Defendants' motion for summary judgment therefore should be granted as to Count XXII.

Additionally, the Court grants summary judgment in favor of Defendants on Latricia's Illinois Whistleblower Act claim (Count XX). The Illinois Whistleblower Act prohibits an employer from retaliating against an employee who discloses "to a public body conducting an investigation, or in a court, an administrative hearing, or any other proceeding initiated by a public body, information related to an activity, policy, or practice of the employer" that violates state or federal law, or for "disclosing . . . information to a government or law enforcement agency. . . ." 740 ILCS 174/15. Simply raising a complaint to your supervisor is not sufficient to satisfy the requirement that the disclosure be made in court, at a hearing, or any other "proceeding." *See Brown v. Elementary Sch. Dist. 159*, 2019 IL App (1st) 172590-U, 2019 WL 1575212, at ¶ 31 (Ill. App. 3d. Mar. 20, 2019) ("Although the complaint states that Brown raised her concerns in a memo to her immediate supervisor and the Board, it fails to allege that Brown disclosed this information in an actual hearing, meeting or any proceeding"). Latricia was terminated in August 2017, approximately six months before this suit was filed, which is the only Court proceeding or hearing Latricia has been involved in regarding her wage complaints to the Court's knowledge. Therefore, there is no evidence that Defendants retaliated against Latricia for disclosing "to a public body conducting an investigation, or in a court, an administrative hearing, or any other proceeding initiated by a public

body, information related to an activity, policy, or practice of the employer" or "to a government or law enforcement agency," as required by the Illinois Whistleblower Act. Summary judgment therefore is granted in favor of Defendants on Count XX.[8]

In sum, Defendants' motion for summary judgment is granted as to all of Datisha's retaliation claims (Counts XIII, XV, XVII, XIX, XXI and XXIII) because there is no evidence of causation in the record. The motion is also granted as to Latricia's claims pursuant to the Illinois Whistleblower Act (Count XX) and common law retaliatory discharge (Count XXII). It is denied as to the rest of Latricia's retaliation claims (Counts XXII, XIV, XVI, and XVIII.)

## III. Khalil Defendants' Motion

### A. Employer Status Pursuant to the FLSA, IWPCA, and IMWL

The Court denies the Khalil Defendants' motion for summary judgment to the extent it requests a finding that they do not qualify as "employers" under the IMWL, IWPCA, and FLSA. All three statutes define "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §203(d); 820 ILCS 115/2 ("the term 'employer' shall include . . . any person or group of persons acting directly or indirectly in the interest of an

[8] The Court rejects Defendants' arguments that Latricia's claims under the Cook County Minimum Wage Ordinance or the Chicago Minimum wage are similarly limited. (Dkt. 384 at 8.) Both ordinances are broadly worded, with language prohibiting retaliation "for exercising any right under this chapter including, but not limited to, disclosing, reporting, or testifying about any violation of this chapter or regulations promulgated thereunder." Cook County Ordinance 42-20 (https://library.municode.com/il/cook_county/codes/code_of_ordinances?nodeId=PTIGEOR_CH42HURE_ARTIINGE_DIV2MIWA_S42-20REPR), Chicago Municipal Code §6-105-080 (https://codelibrary.amlegal.com/codes/chicago/latest/chicago_il/0-0-0-2639889). Unlike the Illinois Whistleblower Act, there is no requirement in the plain language of either statute that mandates that the relevant disclosure be made to a law enforcement or government agency to be actionable. Nor have Defendants cited any cases that have held that the Cook County Minimum Wage Ordinance or the Chicago Minimum Wage Ordinance have any such requirement, and the Court will not create one here.

employer in relation to an employee"); 820 ILCS 105/3(c) (same). "[T]he Supreme Court has 'instructed courts to construe the terms 'employer' and 'employee' expansively to effect Congress's remedial intent in enacting the FLSA.'" *Dawkins v. NR 1 Transp., Inc.*, No. 20 C 4063, 2021 WL 4125086, at *4 (N.D. Ill. Sept. 8, 2021) (internal citations omitted). "The Seventh Circuit has not specifically addressed the legal test or standard to apply in deciding if an individual defendant is an employer under the FLSA." *Id*. (citing *Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690, 697 (N.D. Ill. 2015), *supplemented*, No. 13 CV 4887, 2016 WL 278813 (N.D. Ill. Jan. 15, 2016)). The Seventh Circuit has declined to apply a rigid test; instead, "the Seventh Circuit interprets the act as authorizing suit against another employee if that other person had '*supervisory authority*' and '*was responsible in whole or part for the alleged violation.*'" *Id*. (internal citations omitted). Like other colleagues in this District, this Court will "look at all facts surrounding the defendant's supervision of the employee and determine whether the defendant exercised control and authority over the employee in a manner that caused the FLSA violation (at least in part)." *Id*. (internal citation omitted).

For Moeen Khalil, there is sufficient evidence to deny summary judgment. He testified that he had authority to hire and fire employees, set hourly wages, and set commissions; and an email was sent with Moeen's name offering to hire Mohammed Ghaben as the Area Manager for the Chicagoland stores. (Dkt. 394-1 at 157:1-158:5; Dkt. 394-4.) There is evidence that Moeen administered the "Chicago All Stars" group and added members. (Dkt. 394 at ¶ 4.) Datisha testified that she lodged her wage complaints in the group chat. (Dkt. 397-5 at 54:18-55:15). Based on this evidence, a reasonable juror could conclude that Moeen Khalil was Plaintiffs' "employer" as defined in the relevant statutes. There is evidence in the record that Moeen Khalil had authority to control the conditions of employment, was involved in a group chat wherein

employees discussed issues with their wages and hired at least one Area Manager to supervise the relevant stores. This is enough to defeat summary judgment on this issue as to Moeen Khalil.

With regard to Saed Khalil, it is true as the Defendants argue that there is no evidence in the record that he had any day-to-day responsibilities over the management of the franchise locations or their employees. Many of the cases finding individual liability of corporate officers involve officers who play a more significant role in business operations than Saed did. *See Solis v. Int'l Detective & Protective Serv., Ltd.,* 819 F. Supp. 2d 740, 749 (N.D. Ill. 2011) ("the leadership positions of William and Arnett Lillard, coupled with their extensive daily oversight of IDPS's operations align this case with others that have found individual liability"); *Dawkins*, 2021 WL 4125086, at *5 (defendant was "employer" under FLSA where he "was the owner and operator . . . supervised day-to-day activities, had the authority to decide whether employees received their final paycheck, had a regular practice of withholding final paychecks upon termination, and refused to give Plaintiff and Donald Brown their final paychecks when they asked, despite having the authority to do so").

However, two factually similar cases shed light on the analysis here. Although *Schneider* eventually denied employer liability upon a full bench trial, 148 F.Supp.3d at 698-99, the court in *Schneider* had earlier denied the individual defendants' motion for summary judgment seeking a ruling that they were not "employers" under the FLSA, just as this Court does here. *See Schneider v. Cornerstone Pints, Inc.*, No. 13 CV 4887, 2015 WL 12834755, at *2 (N.D. Ill. May 6, 2015). Although there were additional facts in *Schneider,* many of the facts relied upon to deny summary judgment in that case also appear in the instant case, including significant ownership interest in the business, providing funds to cover expenses, and reviewing profit/loss statements. *Id*. Given

the procedural posture of this case, this Court has followed *Schneider's* analysis and is denying summary judgment.

Additionally, in *Harper v. Wilson*, 302 F. Supp. 2d 873, 875 (N.D. Ill. 2004), plaintiffs sued both the corporation that employed them and the corporation's owners "for overtime pay, unpaid wages and retaliatory discharge under the federal Fair Labor Standards Act ('FLSA'), the Illinois Wage Payment and Collection Act and the Illinois Minimum Wage Law." A bench trial was held, and the findings of fact made by the court regarding the individual defendants were that "Mr. Wilson was a Vice President of Protection" and "Mrs. Wilson was the President and CEO of Protection." *Id.* at 877. In concluding that the individual defendants were liable as employers, the court's analysis was as follows:

> This Court has already found Mr. and Mrs. Wilson to be corporate officers of Protection. Further, Protection as an entity is liable to Emerson for his wage dispute. Corporate officers may be held personally liable "for the corporation's statutory wage obligations," and the FLSA is given a broad interpretation on this point. Emerson has named both Robert and Tammy Wilson, along with Protection, as individual defendants in this case. Protection and its officers had an obligation to ensure that Emerson was paid properly for the overtime that he worked. This Court finds that both Robert and Tammy Wilson are personally liable, along with Protection, for Emerson's overtime claim.

*Id.* at 883 (internal citations omitted).

Therefore, in *Harper*, the court held that being a corporate officer with an obligation to ensure that employees were paid properly was enough to support a finding that an individual was an "employer" under the FLSA, IWPCA, and IWML.

Here, Saed Khalil was the sole and managing member of WirelessPCS Chicago LLC. (Dkt. 394 at ¶ 6.) However, his role, as relevant here, was not strictly limited to being a passive owner or just having his name on the corporate paperwork, particularly as it pertains to payroll. Saed had

authority to order transfers of money to ensure that the relevant corporations had sufficient capital for operations, presumably including payroll. (Dkt. 394-2 at 73:21-74:22.) He delegated authority over payroll, handbooks, and company policies to Fatin Ittayem, who handled them on his behalf. (Dkt. 394-7 at 50:20-51:2, 68:17-69:4), but Saed also reviewed the profit and loss statements with his bookkeeper on a quarterly basis, and reviewed expenses, including payroll. (Dkt. 397-3 at 77:20-79:5.) In other words, Saed ultimately had control over the finances of the relevant corporations, including payroll, and thus was responsible for the alleged violation(s), at least in part. *See Dawkins*, 2021 WL 4125086, at *4. While there is less evidence in the record to support Saed's status as an employer under the relevant wage statutes than as to Moeen, the Court cannot say that either of the Khalil Defendants have carried their burden that there is no genuine issue of material fact on this issue. As such, the motion is also denied as to Saed Khalil.

**B. Piercing the Corporate Veil**

The Khalil Defendants' motion is granted to the extent that it seeks a ruling that Plaintiffs may not pierce the corporate veil. "In Illinois, a corporation's 'veil' of limited liability may be pierced only if two requirements are met: 'First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'" *Hystro Prod., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388–89 (7th Cir. 1994) (quoting *Van Dorn Co. v. Future Chemical and Oil Corp.,* 753 F.2d 565, 569–70 (7th Cir.1985)). "Although the 'promote injustice' test requires something less than an affirmative showing of fraud, it requires something more than the mere prospect of an unsatisfied judgment." *Id.* at 1390 (citing *Sea–Land Services, Inc. v. Pepper Source,* 941 F.2d 519, 522-23 (7th Cir.1991)). "The doctrine of piercing the corporate veil . . . is the rare exception,

applied in the case of fraud or certain other exceptional circumstances." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S. Ct. 1655, 1661, 155 L. Ed. 2d 643 (2003). "Given the reluctance of courts to pierce the corporate veil, a party seeking this remedy has the substantial burden of showing that the corporation is merely a sham which exists for the benefit of . . . its *alter ego*." *Liberty Mut. Ins. Corp. v. M&O Springfield Co.*, 172 F.3d 53 (7th Cir. 1998).

Assuming, without deciding, that there was sufficient evidence in the record to support a finding that there was such unity of interest and ownership that the separate personalities of the corporation and the Khalil Defendants no longer existed, there is not sufficient evidence that refusing to pierce the corporate veil in this case would sanction a fraud or promote injustice. Plaintiffs' entire argument on this issue is as follows:

> The Khalils treated their entities as a single cell phone endeavor, merely with regional divisions. That region had no bearing on how things were handled. Instead, that division [sic] simply to avoid financial responsibilities. Once employees realized their rights were being violated, the Khalils moved their focus elsewhere and the state dissolved their corporation.

(Dkt. 392 at 14-15 (internal citations omitted).)

In this fairly undeveloped argument, Plaintiffs' argument at best is that the record supports that the danger to Plaintiffs from this corporate form is an unsatisfied judgment, which is not enough. *See Roller Bearing Co. of Am., Inc. v. MostonTR Pazarlama Dokum Ve Makina San., Ltd. Sti.*, No. 20 C 6924, 2021 WL 5882146, at *6 (N.D. Ill. Dec. 12, 2021) ("For the second prong, courts have repeatedly held that the prospect of an unsatisfied judgment is not sufficient to establish that piercing the corporate veil would prevent fraud or injustice"). Moreover, as noted directly above, the Khalil Defendants are going to have to defend themselves against personal liability at trial. This is not a situation in which the corporate form is being used to entirely prevent claims against

the individual corporate officers; Plaintiffs will have the opportunity to try to hold the individuals they claim were responsible for the wage violations accountable at trial.

Simply put, Plaintiffs cannot meet the "substantial burden" required to pierce the corporate veil in this case, based on the record before the Court. Therefore, the Court grants the Khalil Defendants' motion for summary judgment on the issue of piercing the corporate veil.

**CONCLUSION**

For the reasons discussed above: 1) Plaintiffs' Motion for Summary Judgment [377] is denied; 2) Defendants' Motion for Summary Judgment [382] is granted as to Counts XIII, XV, XVII, XIX, XX, XXI, XXII, and XXIII, and denied as to the remaining retaliation claims; and 3) Defendants' Moeen Hasan Khalil and Saed Khalil's Motion for Summary Judgment [385] is denied as to the issue of "employer" liability, and granted as to piercing the corporate veil.

**Dated: 3/31/25**

BETH W. JANTZ
United States Magistrate Judge